Appeal No. 26-1041

# United States Court of Appeals
### for the
## Federal Circuit

KOSHY MATHAI, M.D.,

*Plaintiff-Appellant*,

- v. -

UNITED STATES,

*Defendant-Appellee*,

ON APPEAL FROM THE UNITED STATES COURT OF FEDERAL
CLAIMS IN CASE No. 1:24-cv-01954-SSS, Judge Stephen S. Schwartz

**CORRECTED BRIEF FOR PLAINTIFF-APPELLANT**

Koshy Mathai, M.D.
*Pro se Appellant*

December 15, 2025

1

# CERTIFICATE OF INTEREST

Plaintiff-Appellant Koshy Mathai, M.D., appearing pro se, certifies the following:

**1. The full name of every party represented by me is:**

Koshy Mathews Mathai, M.D.

**2. The real party in interest represented by me is:**

Koshy Mathews Mathai, M.D. (Appellant)

**3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are as follows:**

None. Appellant is an individual and has no corporate parent; no publicly held company owns 10% or more of any interest.

**4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency, or are expected to appear in this Court, are:**

None. Appellant proceeded pro se in the Court of Federal Claims and will appear pro se in this Court.

Respectfully submitted,

Dated: December 15, 2025            By:   /s/ Koshy Mathai, M.D.

Koshy Mathai, M.D.

*Pro se Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................ 5

STATEMENT OF RELATED CASES ................................................ 13

JURISDICTIONAL STATEMENT .................................................... 13

STATEMENT REGARDING ORAL ARGUMENT ............................ 13

STATEMENT OF THE ISSUES ....................................................... 14

STATEMENT OF THE CASE AND FACTS .................................... 16

SUMMARY OF THE ARGUMENT ................................................. 29

STANDARD OF REVIEW .............................................................. 33

ARGUMENT .................................................................................................. 35

    I.    The CFC Misframed a Pro Se Takings Claim and Dismissed on That Basis; Vacatur is Required .................................................................. 35

    II.   A Physician's Specialized Title 38 Labor is Cognizable "Property" for Takings Purposes at the Pleading Stage ................................................ 37

    III.  The Government's Authorized Appropriation/Diversion of that Appointed Labor is Actionable as a Per Se Taking or under Penn Central ......................................................................................................... 46

    IV.  Allegations of a Pre-hire Plan to Appoint for One Clinical Purpose and Divert Labor to Another Independently State a Plausible Takings Claim Warranting Remand …................................................................ 53

    V.   The Court of Federal Claims' Handling of the Government's Out-of-time Motion and Nonresponsive Briefing Warrants Remand under the Abuse-of-Discretion Standard .......................................................................... 56

    VI.  The Court of Federal Claims' Treatment of the Sur-reply, Sealing, and RCFC 12(d) Likewise Exceeded Permissible Discretion and Warrants Remand Guidance ........................................................................... 57

CONCLUSION ……………………................................................ 60

ADDENDUM ………………….................................................. Appx001-007

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## Cases

### Supreme Court Cases

*American Steel Foundries v. Tri-City Cent. Trades Council,*
      257 U.S. 184 (1921) ………………………………………… 40

*Arkansas Game & Fish Comm'n v. United States,*
      568 U.S. 23 (2012) ……………………………...………………… 50

*Armstrong v. United States,*
            364 U.S. 40 (1960) ……………………………………… 31, 50, 56

*Brooks-Scanlon Corp. v. United States,*
      265 U.S. 106 (1924) ……………………………..……………… 47, 48

*Brown v. Legal Found. of Wash.,*
      538 U.S. 216 (2003) ……………………………..……… 29, 38

*Butler v. Perry,*
      240 U.S. 328 (1916) ……………………………… 14, 30, 37, 43, 52

*Cedar Point Nursery v. Hassid,*
      141 S. Ct. 2063 (2021) ………………………..……… 14, 31, 38, 49, 50, 55

*Dent v. West Virginia,*
      129 U.S. 114 (1889) ……………………………………… 39

*Devillier v. Texas,*
      601 U.S. 285 (2024) ……………………………………...… 60

*Duplex Printing Press Co. v. Deering,*
      254 U.S. 443 (1921) ……………………………………… 39

*First English Evangelical Lutheran Church v. Cnty. of Los Angeles,*
      482 U.S. 304 (1987) ……………………………………… 60

*Horne v. Dep't of Agric.*,
576 U.S. 350 (2015) …………..…………………… 14, 29, 38, 50, 51, 55

*Int'l News Serv. v. Associated Press*,
248 U.S. 215 (1918) ……………………………………… 39

*Jacobs v. United States*,
290 U.S. 13 (1933) ………………………..…………… 29, 36, 44

*Kaiser Aetna v. United States*,
444 U.S. 164 (1979) …………………………………… 60

*Koontz v. St. Johns River Water Mgmt. Dist.*,
570 U.S. 595 (2013) …………………………………… 51

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005) …………………………………… 17, 31, 50

*Loretto v. Teleprompter Manhattan CATV Corp.*,
458 U.S. 419 (1982) …………………………..………… 38, 50

*Lucas v. S.C. Coastal Council*,
505 U.S. 1003 (1992) …………………………..…………… 44

*Lynch v. United States*,
292 U.S. 571 (1934) …………………………………... 60

*Monongahela Navigation Co. v. United States*,
148 U.S. 312 (1893) …………………………………… 44

*Murr v. Wisconsin*,
137 S. Ct. 1933 (2017) …………………………………… 60

*Penn. Coal Co. v. Mahon*,
260 U.S. 393 (1922) …………………………………… 60

*Penn Central Transp. Co. v. New York City*,
438 U.S. 104 (1978) …………………………… 15, 17, 31, 50, 55

*Phillips v. Wash. Legal Found.*,
524 U.S. 156 (1998) …………………………………...………14, 29, 37, 38

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*,
507 U.S. 380 (1993) ……………………………..… 15, 32, 33, 51, 56, 57

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) …………………………………..… 29, 38

*Scheidler v. Nat'l Org. for Women, Inc.*,
537 U.S. 393 (2003) ………………………………………… 61

*Sekhar v. United States*, (No. 12-357), <u>Brief for the United States</u>
570 U.S. 729 (2013) ………………………………………… 38

Selective Draft Law Cases (*Arver v. United States*),
245 U.S. 366 (1918) ………………………………………… 52

Slaughter-House Cases,
83 U.S. (16 Wall.) 36 (1873) …………………………………..… 37

*Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*,
560 U.S. 702 (2010) ………………………………………… 61

*Texas & N.O. R.R. Co. v. Bhd. of Ry. & S.S. Clerks*,
281 U.S. 548 (1930) ………………………………………… 39

*Truax v. Corrigan*,
257 U.S. 312 (1921) ………………………………………… 39

*United States v. Gen. Motors Corp.*,
323 U.S. 373 (1945) ……………………………..… 30, 37

*United States v. Testan*,
424 U.S. 392 (1976) ………………………………………… 61

*Foman v. Davis*,
371 U.S. 178 (1962) ………………………………………… 33

Federal Circuit / Court of Federal Claims

*A & D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014) …………………………………………... 61

*Acceptance Ins. Cos. v. United States*,
583 F.3d 849 (Fed. Cir. 2009) …………………………..…………... 33

*Adams v. United States*,
391 F.3d 1212 (Fed. Cir. 2004) …………………………………...… 43

*Adams v. United States*,
471 F.3d 1321 (Fed. Cir. 2006) …………………………………………... 61

*Air Borealis Ltd. P'ship v. United States*,
167 Fed. Cl. 370 (2023) …………………………………………….. 61

*Air Pegasus of D.C., Inc. v. United States*,
424 F.3d 1206 (Fed. Cir. 2005) ………………………………… 46, 54

*Am. Bankers Ass'n v. United States*,
932 F.3d 1375 (Fed. Cir. 2019) …………………………………...… 44

*Am. Pelagic Fishing Co. v. United States*,
379 F.3d 1363 (Fed. Cir. 2004) …………………………………...… 44

*Campo v. United States*,
Nos. 20-44, 20-47, 20-55 (Fed. Cl. Dec. 23, 2021) ………………….… 61

*Casitas Mun. Water Dist. v. United States*,
543 F.3d 1276 (Fed. Cir. 2008) ………………………………...… 61

*Castle v. United States*,
301 F.3d 1328 (Fed. Cir. 2002) ………………………………...… 61

*Cienega Gardens v. United States*,
331 F.3d 1319 (Fed. Cir. 2003) ………………………………...… 61

*El Bey v. United States,*
 152 Fed. Cl. 777 (2021) ………………………………………….……….. 61

*Hearts Bluff Game Ranch, Inc. v. United States,*
 669 F.3d 1326 (Fed. Cir. 2012) …………………………………...… 61

*Huntleigh USA Corp. v. United States,*
 525 F.3d 1370 (Fed. Cir. 2008) …………………….…………… 46, 54

In re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs,
 138 Fed. Cl. 658 (2018) ………………………………………..… 61

*Inter-Tribal Council of Ariz., Inc. v. United States,*
 956 F.3d 1328 (Fed. Cir. 2020) …………………………....… 33, 56, 57

*King v. United States,*
 *No. 18-1115 (Fed. Cl. Apr. 8, 2022)* ……………………….… 44, 47

*Mitchell Arms, Inc. v. United States,*
 7 F.3d 212 (Fed. Cir. 1993) …………………………………..… 46, 54

*Moden v. United States,*
 404 F.3d 1335 (Fed. Cir. 2005) ……………………………… 30, 33, 38, 54

*Piszel v. United States,*
 833 F.3d 1366 (Fed. Cir. 2016) …………………………….… 46, 54

*Ridge Line, Inc. v. United States,*
 346 F.3d 1346 (Fed. Cir. 2003) …………………………….… 38, 51

*Shaw v. United States,*
 226 Ct. Cl. 240 (1981) …………………………………..…… 43, 62

*Trusted Integration, Inc. v. United States,*
 659 F.3d 1159 (Fed. Cir. 2011) ……………………………..…… 29, 36

*Yifru v. United States,*
 No. 2023-1697 (Fed. Cir. Jan. 11, 2024) ……………………..… 33, 61

Other Federal Courts

*Doe I v. Unocal Corp.*,
    395 F.3d 932 (9th Cir. 2002) ……………………………..……….… 40

*Eden v. People*,
    161 Ill. 296, 43 N.E. 1108 (1896) …………………………….…… 42

*O'Hara v. Stack*,
    90 Pa. 477 (1879) ……………………………………………………… 41

*People v. Barondess*,
    31 N.E. 240 (N.Y. 1892) …………………………………….… 41

*People v. Cuddihy*,
    271 N.Y.S. 450 (Ct. Gen. Sess. 1934) ………………………….… 41

*People v. Hughes*,
    32 N.E. 1105 (N.Y. 1893) …………………………………...… 41

*People ex rel. Short v. Warden of City Prison*,
    130 N.Y.S. 698 (App. Div. 1911), aff'd, 99 N.E. 1116 (N.Y. 1912) … 40, 41

*Purvis v. Local No. 500, United Bhd. of Carpenters & Joiners of Am.*,
    214 Pa. 348, 63 A. 585 (1906) …………………………………… 41

*State v. Kramer*,
    31 Del. 454, 115 A. 8 (1921) ……………………………….… 41, 42

*Suckow v. Bd. of Med. Exam'rs*,
    182 Cal. 247, 187 P. 965 (1920) ………………………………….… 42

*Tompkins v. United States Dep't of Veterans Affairs*,
    16 F.4th 1236, 1239–40 (10th Cir. 2021) ………………………...… 45

*United States v. Thompson*,
    647 F.3d 180 (5th Cir. 2011) …………………………………… 30, 40

*Va. Hosp. & Healthcare Ass'n v. Roberts*,
    671 F. Supp. 3d 633 (E.D. Va. 2023) ………………………………….. 61

*Wood v. Sec. Mut. Life Ins. Co.*,
112 Neb. 66, 198 N.W. 573, 34 A.L.R. 712 (1924) ……………………… 42

Other, State Courts & Pro Se / Liberal Construction

*Bogni v. Perotti*,
112 N.E. 853 (Mass. 1916) …………………………………..……..… 37, 43

*Branson v. Indus. Workers of the World*,
95 P. 354 (Nev. 1908) ……………………………………………..… 43

*De Lisio v. Alaska Superior Ct.*,
740 P.2d 437 (Alaska 1987) …………………………………………… 61

*Raymer v. Trefry*,
132 N.E. 190 (Mass. 1921) …………………………………………..… 61

*Republic Iron & Steel Co. v. State*,
66 N.E. 1005 (Ind. 1903) …………………………………………..… 43

*Erickson v. Pardus*,
551 U.S. 89 (2007) ……………………………………………..… 14, 29, 35

*Haines v. Kerner*,
404 U.S. 519 (1972) …………………………………..… 14, 29, 32, 34, 35, 57

**Legislative / Structure**

S. Rep. No. 79-858 (1945)


Pub. L. No. 79-293 (1946)


Pub. L. No. 102-40 (1991)


S. Rep. No. 108-357 (2004)


VA Annual Pay Ranges / Pay Tables (2020–2025)

**<u>Other Authorities</u>**

Fifth Circuit Pattern Jury Instructions (Criminal) § 2.73A & notes (2024 ed.)

John Locke, *Two Treatises of Government* § 27 (1690)

Taja-Nia Y. Henderson, *Dignity Contradictions: Reconstruction as Restoration*, 92 Chi.-Kent L. Rev. 1135 (2018)

**<u>Constitution & Statutes</u>**

U.S. Const. amend. V (Takings Clause)

28 U.S.C. § 1295(a)(3)

28 U.S.C. § 1491(a)(1) (Tucker Act)

28 U.S.C. § 1652 (Rules of Decision Act)

38 U.S.C. § 7301; § 7401(1); §§ 7421–7431

**<u>Rules</u>**

RCFC 6(b)

RCFC 12(b)(6)

RCFC 12(d)

RCFC 15(a)(2)

## STATEMENT OF RELATED CASES

Appellant is unaware of any other appeal in this Court that will directly affect or be directly affected by this case. Any District court action brought by the Plaintiff involves distinct tort claims and remedies and does not present the same Fifth Amendment claim for just compensation under the Tucker Act.

## JURISDICTIONAL STATEMENT

The Court of Federal Claims ("CFC") had jurisdiction under 28 U.S.C. § 1491(a)(1). Final judgment dismissing the action under RCFC 12(b)(6) was entered on September 12, 2025. Appellant filed a timely notice of appeal on October 8, 2025. This Court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested. The appeal raises important questions at the intersection of the Takings Clause and Title 38's Excepted-Service Physicians' labor.

**STATEMENT OF THE ISSUES**

1. Did the CFC err by reframing Dr. Mathai's Fifth Amendment claim alleging a taking of specialized professional labor appointed under 38 U.S.C. § 7401(1), into a different dispute about a withheld "retention incentive," and then dismissing on that reframing, rather than engaging the claim pleaded, with the liberal construction owed a pro se complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

2. Whether a Physician's specialized professional **labor**, which justified Excepted Service appointment under § 7401(1), **is "property"** protected by the Fifth Amendment at the pleading stage. *Butler v. Perry*, 240 U.S. 328, 333–34 (1916); *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 170 (1998).

3. Whether the Government's appropriation of Appellant's specialty labor and direction of its clinical use through premeditated reassignment pressure and compensation levers, states a cognizable taking for just compensation under the Tucker Act. *Horne v. Dep't of Agric.*, 576 U.S. 350, 361–66 (2015); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–74 (2021).

4. Whether allegations that the Agency, pre-hire, intended to appoint for one clinical purpose in order to divert the appointee's labor to different purposes plausibly plead a Taking (per se or Penn Central), warranting remand for

factual development rather than dismissal. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

5. Whether the CFC abused its discretion by granting the government's construed motion for leave to file out of time without applying the Pioneer factors and then crediting nonresponsive briefing. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

6. Whether the Court of Federal Claims abused its discretion by declining to consider Appellant's proposed sur-reply (Appx099-160) after initially accepting it under seal and then rejecting sealing; and whether the court applied the correct standards for sealing and sur-replies.

Multiple courts have already opined that **labor is property**. *See* Appx011-014; Appx093-094. This appeal presents a **narrow** Takings question: whether, at the pleading stage, a Title 38 physician's claim that the United States pre-planned to acquire his specialized clinical labor and divert it to different uses is categorically barred by *Testan*-type employment cases, or whether it states at least a plausible, non-frivolous claim for just compensation. This appeal seeks an opportunity, at the pleading stage, to prove facts and address due compensation, not to handle CSRA personnel disputes, but to confirm specialized Title 38 clinical labor is cognizable property.

**STATEMENT OF THE CASE AND FACTS**

A.     Appellant Dr. Mathai brought a Tucker Act claim for just compensation grounded in authorized sovereign action, not in unlawful personnel action.

Dr. Mathai is a Double-Board-Certified physician (Pain Management, Anesthesiology). The Department of Veterans Affairs (VA) recruited him as a permanent, full-time Title 38 Pain Management Specialty Physician under 38 U.S.C. § 7401(1), with a specified focus on Interventional Pain Management for veterans.

The case alleges that VA, acting through Central Texas Veterans Health Care System (CTVHCS) leadership, diverted that specialized Pain Management labor into Whole Health / Addictionology practice.

Critically, Dr. Mathai did not sue for back pay, promotion, or reinstatement in the CFC. Instead, he sought Fifth Amendment just compensation for the Government's appropriation of his specialized professional labor, property he alleges Congress itself recognized and targeted when it created a separate Title 38 Excepted Service scheme for physicians, dentists, and certain other professionals. He pled that his specialized Pain Management labor was taken "for public use" through an authorized appointment, but with a pre-hire plan to divert that labor to a different Specialty or practice.

16

**B.**     Congress created a separate, Excepted-service scheme for VHA physicians via Title 38 to meet clinical needs that the Competitive service could not, reflecting distinct property interests in specialized labor.

The appointment authority is distinct from Title 5 and the CSRA and was designed with intent by Congress to be separate, mission-driven authority to acquire that specialized labor found by the Secretary of VA to be necessary for the health care of Veterans. Dr. Mathai's pleading situates his labor as the scarce, mission-justified input Congress recognized and targeted for acquisition.

While appointed as a Pain Management Specialty Physician with VA, Appellant alleges VA repeatedly pressured reassignment to alternate specialty practice, for which Dr. Mathai was not trained (neither in medical school, nor in Anesthesia residency, nor in Pain Medicine fellowship) and which was not part of the lawful basis for appointment, alternate specialty evaluations for which Dr. Mathai was not privileged, and for non-specialty, programmatic tasks, and leveraged compensation tools (including withholding a retention incentive) when he disagreed. Even as he continued performing his hired-for interventional pain tasks, these actions were tied by Management to depressed compensation below even VA's own market valuation (as reflected in VA pay tables), which speaks directly to Penn Central factors *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539–40 (2005).

17

C. <u>The government was awarded leave to file out of time after an extension request that did not engage the Pioneer factors; the CFC then declined to consider Appellant's proposed sur-reply</u>.

Procedurally, the complaint was met with a Rule 12(b)(6) motion to dismiss. The government later sought leave for an enlargement of time for their reply and was granted leave to file a reply out of time; the government's stated justification for the additional time: "We have good cause for making this request. Although the Department of Justice was notified of this suit on November 27, 2024, due to a regrettable administrative error, this matter was not immediately assigned to a trial attorney." On being granted the leave, there was no record evidence that the four-factor Pioneer excusable-neglect test/analysis was applied. The Court appears to have granted the enlargement request without a detailed on-record *Pioneer* analysis; however, had the Appellant not filed within the required timeframe, the case would have been barred irrevocably.

In its late reply, which was actually a Motion to Dismiss, and followed by additional submissions, DOJ leaned more and more on additional materials and arguments that Appellant contends went beyond the four corners of the complaint and the attached exhibits. Appellant moved for leave to file a Sur-reply, submitting additional materials and arguments he believed necessary to respond fully and to protect parallel administrative proceedings. The CFC accepted the sealed filings

into the record and issued an order to show cause regarding sealing, stating in the order, "Plaintiff's filing shall remain under seal pending this Court's determination as to what, if any, portion of Plaintiff's Sur-Reply should be sealed" but upon receipt of Appellant's response to the Order, ultimately declined to consider the proposed sur-reply or its exhibits.

The Opinion and Order (Appx001-003) thus dismissed the complaint based largely on the government's framing of the case, treating it as an ordinary personnel dispute foreclosed by *Testan* and *Shaw*-type authorities, while declining to consider Appellant's sur-reply and without converting the motion under Rule 12(d), despite the late reply's reliance on materials beyond the initial pleadings.

The government's briefing repeatedly recast this case as if it were a sweeping challenge to job assignments, promotions, or personnel management in the federal service. It is not.

Dr. Mathai does not ask the Court to police every shift in duties, every realignment chart, or every disappointed employee. He alleges a far more limited and concrete injury: that the United States **deliberately planned a post-hire action in the pre-hire stage**, recruited and hired him into a specific Excepted Service, Title 38 specialty position to obtain his scarce Pain-Management labor,

and only **afterwards enacted that pre-hire plan to divert the pre-acquired**

**specialty labor** to other institutional uses.



The question on appeal is simply whether that narrow theory can be

dismissed as a matter of law at the Rule 12(b)(6) stage, without allowing any

factual development.

**TIMELINE** (Appx024-033)

1. 2019 (early) – Central Texas Veterans Health Care System (CTVHCS) began recruiting an Interventional Pain specialist within the Surgery Service. Interim Director Andrew Garcia engaged with Dr. Mathai, then looped in Central Texas VA Chief of Staff Dr. Olawale Fashina; there was no discussion of Addictionology or Whole Health.

2. June 10, 2019 – Pain Section Chief Dr. Raja Shehadi emailed Dr. Mathai: "Thank you for your interest in the position for Interventional Pain Management at the CTVHCS, Temple, Texas…. I am the chief of the Pain Management Section…." That email confirmed that the position Dr. Mathai was being recruited for was Interventional Pain Management.

3. July 3, 2019 – HR (Fanny Henderson) emailed Dr. Mathai that a tentative offer was being prepared for him for the Pain position.

4. August 5, 2019 – HR told Dr. Mathai the only pending items were his physical and final paperwork; the appointment was moving forward for a Pain Management appointment under Title 38.

5. August 14, 2019 – Dr. Mathai emailed Garcia and disclosed his other offers (the compensations listed in the email equate to substantial career-earnings differentials equated to roughly $9.1 million and $2.785 million over time). From that point onward, CTVHCS leadership had explicit notice of both his

Interventional Pain specialization and his high external market value if Mathai did not come to VA.

6. August 16, 2019 – Dr. Mathai received notice that he had been "tentatively selected" as Physician (Pain Management) at the VM-15 level at CTVHCS– Temple.

7. August 19, 2019 – Dr. Alan Johnson signed VA Form 10-0432A recommending Market Pay for Dr. Mathai at $197,000 (total compensation $311,843) based on Dr. Mathai's Pain specialty. HR (Fanny Henderson) signed the technical review. This confirmed that his compensation was being set on the basis of his Pain specialty, not for a Whole Health/Addictionology role.

8. August 20, 2019 – Dr. Fashina, Mr. Garcia, and Dr. Mathai had a phone call, and Dr. Mathai was verbally offered:

    o $320,000 base compensation;

    o plus a $50,000 recruitment incentive, paid as $25,000 per year for two years;

    o with the understanding that continuation thereafter as a retention incentive was "typical" or "likely," though not guaranteed.

Dr. Mathai relied on this compensation structure in deciding whether to leave West Virginia and forgo his other offers.

9. August 22, 2019 (daytime) – Garcia forwarded Dr. Mathai's email about the offer to Dr. Fashina; Dr. Fashina confirmed the recruitment incentive and notified Dr. Mathai he would push the paperwork through promptly.

10. August 22, 2019 (evening) – Dr. Mathai emailed Dr. Fashina explicitly stating his understanding that the $25,000 per year recruitment incentive would typically be continued as a retention incentive, and asked him to correct if any misunderstanding. Dr. Fashina never corrected that understanding.

11. August 23, 2019 – On VA Form 10-0432A ("Part D: Signature(s) of Concurring Official(s)"), Dr. Fashina wrote "I recommend $320,000 Fashina OK recruitment 50K 25K/yr x 2yr" and signed. Director Michael Kiefer signed his approval. This formalized Dr. Mathai's recruitment incentive and confirmed the leadership-level understanding of the market-parity compensation for his Pain specialty role.

12. August 26, 2019 – While Dr. Mathai's Pain recruitment was being finalized, CTVHCS opened a USAJOBS announcement for "Supervisory Recreation Therapist – Director of Whole Health and Integrated Services." That showed a parallel build-out of Whole Health leadership occurring as my Pain recruitment advanced.

13. September 6, 2019 – The "Director of Whole Health and Integrated Services" posting closed. The search for Whole Health leadership proceeded at the same time I was being recruited for Pain.

14. October 2, 2019 – Before resigning from his then-current position, Dr. Mathai emailed HR asking (1) when he should give notice and (2) for written confirmation of the recruitment incentive, which HR had described as "PENDING DIRECTOR'S FINAL APPROVAL." HR responded a firm offer was coming and the incentive paperwork would follow his firm offer and start date. Dr. Mathai was being encouraged to rely on the VA offer.

15. December 16, 2019 – A CTVHCS job announcement for "Physician - Whole Health & Integrated Health Service (WH&IHS) Clinical Director" which differed from the prior Whole Health Directorship position closed. This Whole Health Clinical Directorship position would later be filled by Dr. Edward Lee, who would oversee Whole Health and play a central role in the Realignment and Re-privileging of Dr. Mathai's Pain practice.

16. December 17, 2019 (just one day after the prior accession/event) – CTVHCS HR sent Dr. Mathai the Recruitment Service Agreement for the $50,000 recruitment incentive ($25,000 per year for two years). He signed the recruitment incentive agreement consistent with the previously represented structure and returned it. Dr. Johnson, HR Officer James Apley, and Director

Kiefer signed it, and HR issued to Dr. Mathai the firm offer for the "Physician (Pain Management)" position at CTVHCS–Temple.

17. December 18, 2019 – HR confirmed receipt of Dr. Koshy Mathai's acceptance via USAJOBS. That same day Dr. Mathai submitted his resignation letter to West Virginia University (Neurosurgery Department), stating that he and his wife would be relocating to Texas and setting a final employment date in March 2020. At that point, Dr. Mathai had irrevocably committed to leaving a highly compensated trajectory based on the Pain position and the agreed incentive structure.

18. Early 2020 – Dr. Mathai began work at CTVHCS as an Interventional Pain specialist within Anesthesiology Service, the traditional medical service for which he had been recruited, hired, and privileged.

19. By mid-2020 – The newly created "Physician – Whole Health & Integrated Health Service Clinical Director" position was filled by Dr. Edward Lee, who assumed responsibility for Whole Health and Integrated services - the service line under which Dr. Mathai's Pain Section would soon be re-organized.

20. September 10, 2020 – Chief of Staff Dr. Fashina emailed Dr. Lee about the Pain Section and its oversight: "wait until the realignment is complete before touching the **OPPEs *and* privileges**." *See* Appx055. That email

showed that (a) a realignment of Dr. Mathai's Pain Section under Whole Health was already planned, and (b) leadership intended to divert Dr. Mathai's OPPEs and privileges only after that realignment was finished.

21. Late September 2020 – Dr. Mathai and his colleagues in the Pain Section were informed that the Pain Section was being moved under Whole Health, the service that houses Complementary and Integrative Medicine rather than a traditional medical service. Dr. Mathai had no role in initiating this change, and it moved Dr. Mathai's Pain practice under the control of Whole Health leadership rather than a traditional medical service.

22. Late 2020–2021 – Under Whole Health leadership, Dr. Lee repeatedly moved Pain physicians, including Dr. Mathai, toward Addictionology and Whole Health–style duties that were misaligned with Dr. Mathai's Pain Medicine specialty training, credentials, and original appointment. That reflected a new "use" of Dr. Mathai's labor under Whole Health rather than the Pain practice for which he had been hired.

23. (Later in 2021/2022) – The Pain Section was ultimately re-realigned back under a different, traditional medical service (Anesthesiology). That confirmed that the earlier placement under Whole Health was driven by the Chief of Staff Fashina - and Dr. Mathai's Pain practice could and should have remained under a traditional medical service all along.

24. March 7, 2022 – June 15, 2022 (2022 Market Pay Review sequence) –

- On March 7, 2022, Service Chief Dr. Geanine Pirc signed Dr. Mathai's 2022 Market Pay Review ("P&D Market Pay Review – No Increase").

- On March 8, 2022, Dr. Fashina concurred.

- On April 17, 2022, HR Specialist Liliana Olivera signed the technical review.

- On June 15, 2022, Director Kiefer signed the final approval.

  Despite prior representations that continuation of the $25,000 per year incentive after the initial two years was "typical" as a retention incentive for a high-demand specialist, no retention incentive for Dr. Mathai was proposed, processed, or approved during this review.

25. By mid-2022 – The same market justifications put forth for the Recruitment Incentive existed at the time when the Retention Incentive was to be considered. The unchanged documented market demand, unchanged continued large losses (~$10 million for Pain Management services per year to Community Care expenditures for CTVHCS), the explicit prior exchanges about typical retention incentives, Dr. Mathai's documented Outstanding performance, and Dr. Mathai's known relocation-based reliance, leadership having not advanced a retention incentive for consideration, combined with the earlier realignment under Whole Health and the OPPE/privileges email,

27

reasonably supports the allegation that CTVHCS leadership pre-planned to obtain Dr. Mathai's Pain-specialist labor and then divert it to different programmatic purposes (Addictionology and/or Whole Health) while withholding the full market-parity compensation path involved with Dr. Mathai's leaving West Virginia.

<strong>SUMMARY OF THE ARGUMENT</strong>

**First**, the Court of Federal Claims ("CFC") misframed a pro se takings claim about the appropriation and diversion of Title 38 specialty labor as a mere "retention incentive" or compensation disagreement. Courts must address the claim actually pleaded, or liberally, favorably to the pro se Plaintiff, not a substitute theory of their own, especially when construing a pro se complaint. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163–64 (Fed. Cir. 2011); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Vacatur and remand follow when a court sidesteps the pleaded constitutional theory. *Jacobs v. United States*, 290 U.S. 13, 16 (1933).

**Second**, the complaint plausibly alleges a protected property interest. The Supreme Court has repeatedly declined to confine the Takings Clause to land; personal property and intangibles qualify. *Horne v. Dep't of Agric.*, 576 U.S. 350, 361–66 (2015); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1003–04 (1984); *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 165–72 (1998); *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235–40 (2003). The Fifth Circuit opined that manual labor is property which can be obtained through extortion.[1] *United States v.*

---

[1] Fifth Circuit Pattern Jury Instructions (Criminal) § 2.73A & notes (2024 ed.)

29

*Thompson*, 647 F.3d 180, 186–87 (5th Cir. 2011) (maintenance man coerced to perform work at the home of his boss, the director of a governmental agency).

In the specific Title 38 context, a physician's specialized professional labor --- identified by statute, recruited into a separate Excepted-Service scheme under 38 U.S.C. § 7401(1), and priced separately by specialty within published VA pay tables --- is cognizable "property" at the pleading stage. *Butler v. Perry*, 240 U.S. 328, 333–34 (1916); *United States v. Gen. Motors Corp.*, 323 U.S. 373, 378 (1945); *Moden v. United States*, 404 F.3d 1335, 1342–43 (Fed. Cir. 2005).

Clarifying this narrow question matters beyond Dr. Mathai's case. Congress created the Title 38 and broader Excepted Service structures precisely to recruit and retain specialized professionals whose labor is not fungible with ordinary positions. Those professionals, physicians, psychologists, and other clinical specialists, who are granted specific privileges and practice through those specific privileges, need to know, ex ante, whether the government may pre-plan to obtain their specialty labor for a clinical focus and then divert it to different uses without any Takings scrutiny at all. Whatever the ultimate answer, a precedential ruling that correctly identifies and addresses that narrow question will provide much-needed guidance to both agencies and the specialized workforce Congress sought to attract.

**Third**, the complaint plausibly alleges government action consistent with takings doctrine: the United States, acting through VA, used its Title 38 appointment and assignment authority to appropriate Dr. Mathai's specialty pain-management/anesthesiology labor for different, non-appointed clinical uses, while foreclosing the highest-and-best use of that labor. That is actionable as a per se appropriation of personal property or, at minimum, under *Penn Central*. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–74 (2021); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539–40 (2005).

**Fourth**, the complaint further alleges that the Agency actions were premeditated, that is, planned pre-hire for post-hire implementation, that Agency officials intended to appoint Dr. Mathai for one clinical purpose (interventional pain management) while planning to divert his specialty labor to materially different duties (including Addictionology and Alternative/Complementary care) once he was appointed into Title 38 service. Allegations of a pre-hire diversion plan heighten the takings concerns and, at minimum, make this case unsuitable for dismissal on the pleadings; they warrant factual development on the nature, timing, and extent of the sovereign appropriation. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978); *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

**Fifth**, the CFC's discretionary case-management decisions—granting the government leave to file out of time on a dispositive motion without applying the Pioneer factors on the record and allowing briefing that did not squarely join issue on the takings theory—were mistaken and prejudicial, warranting vacatur and remand under the abuse-of-discretion standard. For a pro se litigant facing dismissal, ignoring *Pioneer's* excusable-neglect framework is consequential. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392–95 (1993) is especially consequential. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

**Sixth**, the CFC's handling of Dr. Mathai's proposed sur-reply (Appx099-160), sealing, and RCFC 12(d) further contributed to that prejudice. After initially accepting the sur-reply under seal, the court ultimately declined to consider it at all, while leaving in place a reply that introduced new matters and extra-pleading context. In a case where the government had already received leniency on timing and framing, those discretionary choices did not fully account for the standards governing sur-replies, sealing, and the treatment of materials outside the pleadings, and they too call for vacatur and remand with guidance.

**STANDARD OF REVIEW**

This Court reviews de novo the Court of Federal Claims' grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Moden v. United States*, 404 F.3d 1335, 1342–43 (Fed. Cir. 2005); *Acceptance Ins. Cos. v. United States*, 583 F.3d 849, 853–55 (Fed. Cir. 2009). In applying this standard, the Court accepts as true all well-pleaded factual allegations and construes them, together with all reasonable inferences, in the light most favorable to the nonmoving party. *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020); *Yifru v. United States*, No. 2023-1697, slip op. at 3–4 (Fed. Cir. Jan. 11, 2024). The same de novo standard applies to the extent the dismissal rests on lack of subject-matter jurisdiction. *Inter-Tribal Council*, 956 F.3d at 1338.

The Court reviews for abuse of discretion the Court of Federal Claims' decisions granting or denying enlargements of time and determining excusable neglect, guided by the four-factor framework set out in *Pioneer*. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Decisions denying leave to amend a complaint are likewise reviewed for abuse of discretion, but leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

The Court reviews the Court of Federal Claims' case-management decisions, including whether to permit a sur-reply, whether to seal or unseal filings, and how to handle materials outside the pleadings, for abuse of discretion. A court abuses its discretion when it bases its ruling on an error of law, fails to consider relevant factors, or exercises its discretion in a manner that results in unfair prejudice, particularly to a pro se litigant. See *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). To the extent the Court of Federal Claims considered matters outside the pleadings in resolving the Rule 12(b)(6) motion without converting under Rule 12(d), the propriety of that treatment presents a legal question reviewed de novo.

**ARGUMENT**

I. <u>The CFC misframed a pro se takings claim and dismissed on that basis; vacatur is required</u>.

The Court of Federal Claims dismissed this action as though it were a dispute over federal employment expectations, salary, or benefits, invoking Shaw's rule that such expectations are not "property." But this case does not challenge Dr. Mathai's employment, classification, or compensation; it alleges that the United States deliberately acquired and diverted his **specialty labor itself**, an independent property interest that exists before, outside, and apart from any federal appointment and its salary/benefits instruments. *Testan* and *Shaw* do not foreclose the property interest alleged; they address whether the Tucker Act creates a damages remedy for improper classification, not whether a distinct Takings theory can proceed where the government appropriates specialized professional labor for public use.

Pro se pleadings must be liberally construed to address their strongest claims. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Dr. Mathai alleged a Fifth Amendment taking: the United States, acting through VA, obtained his congressionally targeted § 7401(1) specialty labor and appropriated it with pre-hire diversion of it for a materially different use than the appointed-for clinical purpose, an authorized-action takings

theory, not a personnel dispute. The CFC reframed the complaint as a retention-incentive dispute and later realignment, invoking *Shaw*. *See* Appx001-003 (reliance on Shaw). That was error: courts must engage the claim pleaded. *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163–64 (Fed. Cir. 2011). Vacatur is warranted. *Jacobs v. United States*, 290 U.S. 13, 16 (1933).

The Court of Federal Claims effectively adopted the government's overbroad reframing of the complaint. The record before the Court is clear: **Dr. Mathai did not seek a Retention Incentive as remedy from the Court with this litigation**. In the government's motion to dismiss, the United States argued as though Dr. Mathai were inviting the judiciary to supervise federal personnel policy largely "second-guessing" VA's internal assignments, retention-incentive decisions, and performance-management judgments. That mischaracterization made the claim look different and much "bigger" than it is, and it allowed the Court to treat this case as if it were nothing more than a disfavored back-pay action. Properly read, however, the complaint alleges a far narrower Takings theory: that the United States pre-planned a diversion of labor for after it used its Title 38 appointment and compensation authorities to acquire a specific, high-value specialty labor resource and then following the appointment, enacted the planned diversion of that resource to different institutional purposes without just compensation; Dr. Mathai considers that such usage of Title 38 appointment

authority was neither intended nor contemplated by Congress, and yet, here we are. Dismissing that focused theory based on generalized employment-law concerns was itself a form of misframing that warrants vacatur and remand.

Once the claim is re-centered on what the complaint actually pleads, the appropriation and diversion of specialized labor for public use, it is clear that the government's floodgates rhetoric was misplaced and that the claim cannot be dismissed simply by labeling it "employment-related."

II. A physician's specialized Title 38 labor is cognizable "property" for Takings purposes at the pleading stage.

Long before modern Takings doctrine, the Court recognized that "Property is everything which has an exchangeable value… Labor is property, and as such merits protection." *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36, 127 (1873) (Swayne, J., dissenting). The Court further reiterated that "for some purposes labor must be considered as property." *Butler v. Perry*, 240 U.S. 328, 333–34 (1916). Courts have treated that statement as addressing a subject "as to which there was no controversy," and have likewise characterized the right to work as a property right. *Bogni v. Perotti*, 224 Mass. 152, 154–55 (1916). "Interest follows principal." *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 170 (1998). Property comprises the "group of rights" to possess, use, and dispose. *United States v. Gen.*

*Motors Corp.*, 323 U.S. 373, 378 (1945). The right to exclude is a core stick. *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–74 (2021).

Personal and intangible interests qualify. The Clause protects personal property and certain intangibles. *Horne v. Dep't of Agric.*, 576 U.S. 350, 361–66 (2015); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001–04 (1984); *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 165–72 (1998); *Brown v. Legal Found. of Wash.*, 538 U.S. 216, 235–40 (2003). At the pleadings stage, Dr. Mathai identified a specific professional asset: Double-Board-Certified Pain-Management/Anesthesiology labor that was targeted by statute (§ 7401(1)) and valued by VA in national pay tables. That plausibly alleges a protectable property interest. *Moden v. United States*, 404 F.3d 1335, 1342–43 (Fed. Cir. 2005); *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355–56 (Fed. Cir. 2003).

Across Supreme Court, federal appellate, and state courts, there is a long tradition of treating labor, the ability to work, to practice a profession, and to run a business as property.[2] In *International News Service v. Associated Press*, the Court

---

[2] These authorities are drawn from the United States' own compilation of cases treating labor, professional practice, and the right to pursue a lawful calling as "property," as set out in its merits brief in *Sekhar v. United States*, 570 U.S. 729 (2013) (No. 12-357), Brief for the United States.

recognized that the right to acquire property by honest labor or by conducting a lawful business is as much entitled to protection as property already acquired, treating the news-gathering enterprise, investment plus labor, as a protectable property interest. *Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918).

In *Dent v. West Virginia*, the Court described the right to practice medicine as an "estate" in which the physician has a valuable interest that cannot be taken away arbitrarily, effectively treating the ability to exercise one's profession as a property right. *Dent v. West Virginia*, 129 U.S. 114 (1889).

In *Truax v. Corrigan*, the Court treated a business, and the free access of employees and customers to that business, as a property right that could be unlawfully impaired by coercive conduct in a labor dispute. *Truax v. Corrigan*, 257 U.S. 312 (1921). In *Duplex Printing Press Co. v. Deering*, the Court described a manufacturer's business of producing and selling goods, rooted in the deployment of labor and capital, as a property right warranting protection against unlawful interference such as a secondary boycott. *Duplex Printing Press Co. v. Deering*, 254 U.S. 443 (1921). In *Texas & New Orleans Railroad Co. v. Brotherhood of Railway & Steamship Clerks*, the Court portrayed employees' rights in their employment relationships, and the employer's ability to operate with its chosen workforce, as protected property-type interests in the labor-relations context. *Texas*

*& N.O. R.R. Co. v. Bhd. of Ry. & S.S. Clerks*, 281 U.S. 548 (1930). And in

*American Steel Foundries v. Tri-City Central Trades Council*, the Court

emphasized that an employer's business and the ability of employees to access the

workplace and perform their jobs are elements of property that courts may shield

from unlawful interference in labor disputes. *American Steel Foundries v. Tri-City*

*Cent. Trades Council*, 257 U.S. 184 (1921).

Building on that foundation, the Fifth Circuit in *United States v. Thompson*

held in the Hobbs Act extortion context that a person's labor --- his time and

services --- qualifies as property and is property capable of being extorted, where a

public official coerced a maintenance worker to perform work at his home. *United*

*States v. Thompson*, 647 F.3d 180 (5th Cir. 2011). The Ninth Circuit in *Doe I v.*

*Unocal Corp.* similarly treated victims' control over their own labor, and their

ability to make personal and business decisions about that labor, as a protected

interest in the forced-labor setting, reinforcing that coerced labor is an invasion of

a property-like right in one's work. *Doe I v. Unocal Corp.*, 395 F.3d 932 (9th Cir.

2002).

State courts, mapped to their respective federal circuits, echo the same

theme. New York decisions in the Second Circuit's territory hold that the right to

labor for wages is property, as in *People ex rel. Short v. Warden*, where

interference with a house painter's job was treated as an invasion of his property interest in his labor. *People ex rel. Short v. Warden of City Prison*, 130 N.Y.S. 698 (App. Div. 1911), aff'd, 99 N.E. 1116 (N.Y. 1912). They also state that a person's "right to labor as he will is his property," as in *People v. Cuddihy*, even though the court ultimately found no violation on the facts. *People v. Cuddihy*, 271 N.Y.S. 450 (Ct. Gen. Sess. 1934). They treat a business's ongoing customer relationships, the ability to continue earning income through one's work, as property, as recognized in *People v. Hughes*. *People v. Hughes*, 32 N.E. 1105 (N.Y. 1893). And they treat the operation of a business in a labor-dispute extortion setting as property within the protection of New York's criminal law, as in *People v. Barondess*. *People v. Barondess*, 31 N.E. 240 (N.Y. 1892).

In the Third Circuit's states, Pennsylvania and Delaware courts are equally explicit: *Purvis v. Local No. 500, United Brotherhood of Carpenters & Joiners of America* declared that "the right of a workman to freely use his hands and to use them for just whom he pleases, upon just such terms as he pleases, is his property," and likewise that a man's business in which he has invested capital is his property. *Purvis v. Local No. 500, United Bhd. of Carpenters & Joiners of Am.*, 214 Pa. 348, 63 A. 585 (1906). *O'Hara v. Stack* stated flatly that "a man's profession is his property," confirming that professional practice is a property interest. *O'Hara v. Stack*, 90 Pa. 477 (1879). And *State v. Kramer* in Delaware held that threats to

have someone fired from his job are threats against his property, because continued employment and the associated ability to earn by labor constitute a property interest. *State v. Kramer*, 31 Del. 454, 115 A. 8 (1921).

In the Seventh Circuit's territory, *Eden v. People* in Illinois recognized that a barber's labor and his ability to operate his barbershop are part of his property, protecting that work from arbitrary Sunday-closing restrictions. *Eden v. People*, 161 Ill. 296, 43 N.E. 1108 (1896).

In the Eighth Circuit's territory, *Wood v. Security Mutual Life Insurance Co.* articulated a broad definition of property as encompassing practically all valuable rights and interests, a formulation broad enough to include rights to work and to pursue one's livelihood. *Wood v. Sec. Mut. Life Ins. Co.*, 112 Neb. 66, 198 N.W. 573, 34 A.L.R. 712 (1924).

And within the Ninth Circuit's territory, *Suckow v. Board of Medical Examiners* held that the right to practice medicine (and, by extension, other licensed professions) is a valuable property right, such that revocation of a license is a deprivation of property rather than a mere privilege. *Suckow v. Bd. of Med. Exam'rs*, 182 Cal. 247, 187 P. 965 (1920).

At the pleading stage, the question is not whether Appellant is ultimately right on the full scope of "labor as property," but whether his claim is so legally foreclosed that he cannot even reach discovery or merits adjudication. Given the Supreme Court's repeated instruction that the Takings Clause is not limited to land and does apply to at least some forms of personal and intangible property, Appellant's theory is not frivolous. The Court of Federal Claims therefore erred in treating it as categorically barred by employment-entitlement cases.

Those cases concern ordinary employment expectations or statutory pay/benefits. *Adams v. United States*, 391 F.3d 1212 (Fed. Cir. 2004); *Shaw v. United States*, 226 Ct. Cl. 240 (1981). Title 38 is different in kind: Congress carved out a lane to acquire scarce clinical labor "without regard to civil-service requirements," supporting it with market/special-pay tools. Confusing the object (labor) with instruments (pay levers) collapses the categories. *Butler v. Perry*, 240 U.S. 328, 333–34 (1916).

State law supplies background principles of property unless federal law says otherwise. For over a century, courts have protected the right to labor and to contract for one's labor as property. *Bogni v. Perotti*, 112 N.E. 853, 855 (Mass. 1916); *Republic Iron & Steel Co. v. State*, 66 N.E. 1005, 1007 (Ind. 1903); *Branson v. Indus. Workers of the World*, 95 P. 354, 361 (Nev. 1908). *Butler v.*

*Perry*, 240 U.S. 328, 333–34 (1916): "labor … [is] property"); *Jacobs v. United States*, 290 U.S. 13, 16 (1933): "not a matter of grace, but of right"); *Monongahela Navigation Co. v. United States*, 148 U.S. 312, 324 (1893): "judicial, and not a legislative, question".

Recent Court of Federal Claims precedent applies this background-principles framework in precisely this way. In *King v. United States*, No. 18-1115 (Fed. Cl. Apr. 8, 2022), the court first asked whether the plaintiffs had identified a specific cognizable property interest and held that vested rights to unreduced pension benefits qualified as such an interest. Relying on *American Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1376 (Fed. Cir. 2004), and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030 (1992), the court looked to "existing rules or understandings" and background principles drawn from state, federal, and common law to define the contours of that interest. It then drew on *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1384–86 (Fed. Cir. 2019), to distinguish interests grounded solely in statute from those grounded in contract or other independent sources. That same analysis supports treating Appellant's pre-existing specialty labor, which was targeted by 38 U.S.C. § 7401(1) and the VA pay tables, as a cognizable property interest, not an expectation of continued federal employment.

To the extent the CSRA is treated as a "comprehensive" remedial scheme for federal personnel, it is comprehensive only with respect to Title 5 civil service personnel actions; Congress has expressly provided that § 7401(1) VA physicians "are appointed 'without regard to civil-service requirements'" and "are not, therefore, covered by the provisions of the Civil Service Reform Act." *Tompkins v. United States Dep't of Veterans Affairs*, 16 F.4th 1236, 1239–40 (10th Cir. 2021). Congress instead built a special Title 38 personnel system because VA physicians are appointed under a statutory framework distinct from the CSRA scheme, and nothing in that framework suggests Congress intended to withdraw from them the basic Takings Clause protections any other owner of property enjoys; to the contrary, Title 38 reflects Congress's recognition of the specialized, market-valued nature of their labor and its decision to give the Secretary greater flexibility in recruiting and deploying that specialized clinical labor. That separate appointment structure neither governs nor purports to displace a Takings claim by a Title 38 physician whose congressionally targeted labor, obtained under that specialized appointment system to recruit and retain highly specialized clinical expertise, was taken for a different public use, and Appellant has been unable to identify any provision in the CSRA or in Title 38 that supplies, or purports to substitute for, a just-compensation remedy for the uncompensated taking of specialized physician labor alleged here.

III. <u>The government's authorized appropriation/diversion of that appointed labor is actionable as a per se taking or, at least, under Penn Central, and fits the authorized-action Takings category.</u>

The CFC never applied the correct takings test, because the CFC did not conduct one: a Penn Central analysis; a Loretto/Horne per se analysis; an authorized / ultra vires analysis; or an assessment on whether professional labor can be a protected asset at the pleading stage (which the Supreme Court has never foreclosed; its non-land takings precedents suggest the opposite). Instead, the court jumped immediately to *Shaw/Adams*, i.e., pay disputes. That is reversible error.

VA appointed Appellant under § 7401(1) and directed his specialty labor into VA programs, use by the sovereign satisfies "government action" and "public use." *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1377 (Fed. Cir. 2008).

This is not a mere frustration case. Takings claims fail where the Government does not assume or appropriate the interest and only frustrates expectations. *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1379–82 (Fed. Cir. 2008); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1214–16 (Fed. Cir. 2005); *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 217–19 (Fed. Cir. 1993); *Castle v. United States*, 301 F.3d 1328, 1342–43 (Fed. Cir. 2002); *Piszel v. United States*, 833 F.3d 1366, 1375–77 (Fed. Cir. 2016).

King confirms that Omnia cannot be deployed as a one-size-fits-all threshold bar to every takings theory. There, the government moved for summary judgment arguing that Omnia and its Federal Circuit progeny defeated the pensioners' claims at the outset. The Court of Federal Claims disagreed: after recognizing a specific property interest in unreduced vested benefits, it held that Omnia did not categorically foreclose the claim under either a physical- or regulatory-takings framework and emphasized that courts must "compare apples to apples and oranges to oranges," first deciding which takings test applies before deciding whether government action can give rise to a taking at all. *King v. United States*, No. 18-1115, slip op. at 30 (Fed. Cl. Apr. 8, 2022). The Court, here, instead treated employment-line cases as if they automatically barred Appellant's theory without ever selecting or applying the correct takings framework.

*King* also synthesizes *Omnia* with *Brooks-Scanlon Corp. v. United States*, 265 U.S. 106 (1924), to clarify when government action crosses from collateral impact into a compensable taking. *Omnia* involved wartime requisitioning of the subject matter of a private contract, which destroyed the contract's value but did not appropriate the contract itself; *Brooks-Scanlon* involved a requisition that deliberately expropriated the claimant's shipbuilding contract, the contract-price installments it had paid, and the benefit of its hired architect and inspector. *King* frames the question as whether the effect of government action on the claimant is

unintended and collateral, as in Omnia, or intended and direct, as in *Brooks-Scanlon*. *King*, No. 18-1115, slip op. at 33. Appellant's allegations that VA officials pre-planned to secure his specialty labor under a pain-management appointment and then redirect that labor into a different clinical program fall on the Brooks-Scanlon side of that divide: they describe an intentional appropriation of the property interest itself, not a regulatory side-effect without taking possession.

In the court's own reasoning, *Huntleigh* affirms that contract rights are a cognizable property interest precisely because they are grounded in the underlying labor (or goods) the contractor stands ready to supply. *Huntleigh's* contracts represented the right to be the party performing passenger screening and to receive payment for deploying its workforce. The Federal Circuit did not deny that this contractual entitlement was "property"; rather, it held there was no taking because TSA never stepped into those contracts or appropriated Huntleigh's right to provide the labor. Congress reassigned the legal responsibility for screening from airlines to the government, and TSA then staffed that task with its own employees. The "subject matter" of the contracts, airport screening, moved into the public sector, but the government did not capture *Huntleigh's* contractual right to sell its labor; it only eliminated the demand for that labor.

Viewed this way, *Huntleigh* draws (not erases) the line between a mere frustration of property interests and a compensable taking. When government action simply destroys the market for a contract or makes performance unprofitable while remaining institutionally separate from and not itself using the owner's labor (or goods), the owner's property is burdened but not appropriated; the contractor's labor remains its own, even if it can no longer be sold on the same terms. By contrast, a different result would follow if the government had actually taken over the contract right and deployed the contractor's labor (or goods) for public purposes. In that scenario, the State would not merely regulate around a private bargain; it would appropriate the very entitlement to supply labor that defines the contract's economic value. Thus, in the courts' eyes, *Huntleigh* confirms that contract rights are "property" because labor itself is cognizable property, and the dispositive distinction is whether the government has merely frustrated the owner's ability to exploit that labor in the marketplace, or has instead taken the underlying labor interest into its own service for public use.

Here, by appointment plus assignment/compensation levers, VA appropriated control over the deployment and value of a discrete professional asset for public programs. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–74 (2021).

Regarding doctrinal paths: (1) Per se appropriation of personal property. *Horne v. Dep't of Agric.*, 576 U.S. 350, 361–66 (2015); *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426–35 (1982); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–74 (2021). (2) *Penn Central* (economic impact; interference with distinct investment-backed expectations; character of action). *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978); *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539–40 (2005); *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 31–32 (2012).

On Economic impact: VA's pay tables and retention tools price Appellant's specialty labor; withholding retention compensation as leverage to compel non-specialty assignments and restricting specialty deployment imposed measurable loss relative to the appointed use. *Penn Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). See Appx059-061, Appx075, Market Pay Review, (Market Pay $212,431; Annual Salary $327,167; V17 50th percentile). On Expectations: A § 7401(1) appointment for interventional pain/anesthesiology presupposes specialty deployment; Appellant's certifications/privileges reflect that investment. On Character: Public, programmatic, sustained use of assignment authority and compensation levers … far from a clerical misstep. *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

The Government may not condition a public benefit on surrendering the right to just compensation. *Horne v. Dep't of Agric.*, 576 U.S. 350, 364–66 (2015); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604–05 (2013). To the extent VA conditioned market-parity retention compensation on diverting specialty labor to other programmatic uses, that underscores sovereign leverage over the property interest. *See* Appx001-003. *See* Appx006-007. *See* Appx059-061 (Form 10-0432A). *See* Appx074-078, Appx080-082. *See* Appx086, Appx088-094, Appx096-097 (RCFC 12(d)). *See* Appx005 ("trusts the error will not be repeated"). *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

This case fits the authorized-action bucket: VA was exercising Title 38 authority to staff and operate clinical programs; the vice is using that authority to commandeer the specialty labor Congress targeted for one purpose and executing a pre-hire plan to divert it to another without due compensation. *Ridge Line, Inc. v. United States*, 346 F.3d 1346, 1355 (Fed. Cir. 2003).

For purposes of the Takings analysis only, Appellant treats the design and implementation of VA's Title 38 recruitment, assignment, and compensation decisions as exercises of governmental authority attributable to the United States. That framing allows the claim to proceed on the familiar premise that the Takings

51

Clause addresses authorized governmental action that appropriates property for public use. It does not concede that VA officials complied with all other statutory, regulatory, ethical, or criminal constraints in carrying out that plan. Those issues are for other fora.

The narrow question here is whether the United States, having used its Title 38 authorities to acquire Appellant's specialized labor and divert it to different uses, may avoid Takings scrutiny altogether at the Rule 12(b)(6) stage.

Nothing in the Takings framework requires a property owner to concede that every aspect of the government's conduct was lawful; it is enough that, as here, the conduct is attributable to the United States and that the complaint plausibly alleges an appropriation of property for public use.

That keeps the claim in the takings lane, avoiding the "no authority, therefore no taking" trap. Conscription cases are inapposite: Title 38 appointments are market appointments, not civic compulsion. *Arver v. United States* (Selective Draft Law Cases), 245 U.S. 366, 377–82 (1918); *Butler v. Perry*, 240 U.S. 328, 332–33 (1916). This Takings inquiry remains focused on appropriation of property, not any conceivable tangential topic.

IV. <u>Allegations of a pre-hire plan to appoint for one clinical purpose while</u> <u>intending diversion to other programmatic uses independently state a plausible</u> <u>Takings claim warranting remand</u>.

Even apart from the day-to-day assignment pressures and compensation levers described above, the First Amended Complaint alleges that VA officials, before Dr. Mathai joined VA, intended to appoint him into Title 38 service as a "PHYSICIAN (PAIN MANAGEMENT)" under 38 U.S.C. § 7401(1) while planning to divert his specialized labor to different duties once he was onboarded.[3] That pre-hire divergence between (a) the clinical purpose for which Congress authorized the Secretary to acquire scarce specialty labor and (b) the actual use to which the Agency intended to put that labor is part of the Takings theory.

The concern is not limited to the later redirection of Appellant's work; it is that VA official(s) allegedly entered the appointment with a pre-existing internal plan to obtain his congressionally targeted § 7401(1) Interventional Pain labor and then repurpose it into a different role of other labor (such as mentioned,

---

[3] Appellant's Takings claim does not depend on any predicate finding of individual criminal liability or personal misconduct; the relief sought centers on vacatur of the dismissal and remand for proper adjudication of the constitutional claim. If, in the course of reviewing the record, this Court discerns evidence suggesting misconduct by individual VA management officials, the Court retains its usual discretion to take whatever further action it deems appropriate. That is not the subject of this appeal.

Addictionology/Whole Health/"All-purpose prescriber") without his agreement to that change.[4]

At the pleading stage, those allegations must be taken as true. *Moden v. United States*, 404 F.3d 1335, 1342–43 (Fed. Cir. 2005). If the government, acting with sovereign staffing authority, knew at the time of appointment that it would redirect a physician's specialty labor away from the appointed purpose and into programmatic or non-privileged roles, then the government did not merely "frustrate" expectations --- it appropriated control of a discrete professional asset for a different public use than the one Congress contemplated. That fits comfortably within the familiar distinction between (1) non-actionable "frustration" cases, where the government does not assume or commandeer the interest. *Huntleigh USA Corp. v. United States*, 525 F.3d 1370, 1379–82 (Fed. Cir. 2008); *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1214–16 (Fed. Cir. 2005); *Mitchell Arms, Inc. v. United States*, 7 F.3d 212, 217–19 (Fed. Cir. 1993); *Castle v. United States*, 301 F.3d 1328, 1342–43 (Fed. Cir. 2002); *Piszel v.*

---

[4] In a different context, the Supreme Court has emphasized that the legally significant moment is the agreement, not the later implementation. Interpreting a federal bribery statute, the Court explained that "the timing of the agreement is the key, not the timing of payment." *Snyder v. United States*, 603 U.S. 1, 14 (2024). The same basic principle is implicated here: what matters is the alleged pre-appointment decision to secure Appellant's § 7401(1) Interventional Pain labor for a different, pre-planned use, with the subsequent post-appointment steps merely carrying out that earlier commitment.

*United States*, 833 F.3d 1366, 1375–77 (Fed. Cir. 2016), and (2) actionable takings where the government uses its authority to direct the object of the property interest to sovereign purposes. *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2072–74 (2021); *Horne v. Dep't of Agric.*, 576 U.S. 350, 361–66 (2015).

Even if the Court is not prepared to treat this as a per se appropriation of personal property, the character of the government action under Penn Central is far from a neutral, across-the-board regulation. The pleaded pre-hire timeline shows a targeted, premeditated diversion of a specific, recruited professional asset: simultaneous Whole Health/Addictionology build-out, the Chief of Staff's instruction to "wait until the realignment is complete before touching the OPPEs and privileges," and the failure to advance a retention incentive despite unchanged facility need. *See* Appx055. The pattern supports the conclusion that this case is not a "frustration of expectations" (*Huntleigh/Mitchell Arms*) but an appropriation and planned redirection of specialty labor to different sovereign uses.

The pre-hire diversion allegations therefore reinforce, rather than duplicate, the core theory: VA used its Title 38 appointment powers to obtain a particular class of professional labor justified by statute and then, contrary to the appointed-for purpose, diverted that labor to different programs and tasks. That is at least enough to require factual development, not dismissal, under *Penn Central*. *Penn*

*Cent. Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978); *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

V. <u>The Court of Federal Claims' handling of the government's out-of-time motion and nonresponsive briefing warrants remand under the abuse-of-discretion standard.</u>

Abuse-of-discretion is the standard for enlargement and excusable-neglect rulings, but legal misapprehensions within that analysis are reviewed de novo. *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020). Here, the CFC granted the government an out-of-time enlargement on a dispositive motion without applying the *Pioneer* factors on the record, despite Pioneer's admonition that "inadvertence, ignorance of the rules, or mistakes" usually do not constitute excusable neglect. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392 (1993).

The prejudice is amplified in a pro se case. The grant for the government to file out of time allowed the government to file a Motion to dismiss that never actually engaged the takings theory pled; it instead reframed the case as a dispute over a "retention incentive," and the CFC ultimately adopted that characterization. The government misses its deadline, received leniency, and then used that opportunity to ignore the central constitutional claim. In these circumstances, the

combination of granting a late enlargement and accepting briefing that did not engage the central takings theory exceeded permissible discretion and warrants vacatur and remand. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

On remand, the CFC should be instructed to apply Pioneer explicitly on the record and to ensure that any renewed dispositive motion actually joins the issues framed by the pleadings, with appropriate sensitivity to the challenges facing a pro se litigant.

VI. The Court of Federal Claims' treatment of the sur-reply, sealing, and RCFC 12(d) likewise exceeded permissible discretion and warrants remand guidance.

Abuse-of-discretion review also governs decisions on sur-replies and sealing, again with legal misapprehensions reviewed de novo. *Inter-Tribal Council of Ariz., Inc. v. United States*, 956 F.3d 1328, 1338 (Fed. Cir. 2020). When new matters appear in a reply, or when a reply invokes extra-record references, RCFC 12(d) counsels either exclusion of those matters or conversion to summary judgment with a fair opportunity to respond. A limited sur-reply is a standard, proportionate way to avoid prejudice, especially for a pro se litigant. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

Here, DOJ's reply brief leaned on extra-record materials (EEO/MSPB/IIED context) and further entrenched its mischaracterization of the case as a compensation dispute. Dr. Mathai sought leave to file a short sur-reply (Appx099-100) to address those developments.[5] The CFC initially accepted the sur-reply under seal but later declined to consider it at all after rejecting sealing, effectively suppressing his response to new government arguments.

The court declined to consider Appellant's proposed surreply based on a narrower view of the limited interest he described in response to the show-cause order. Appellant was not seeking to conceal arguments or evidence from the United States, which already had the surreply and exhibits, nor to block use of the record in other proceedings; rather, he explained that public filing at this interim stage risked prejudicing OSC/MSPB proceedings in which many of the same VA officials are expected to testify again, by promoting a means by which they may coordinate and alter their own testimonies. That concern is analogous to the truth-seeking rationale behind witness-sequestration rules, and Appellant even offered to provide a short addendum for in camera review to give the court more detail. This

---

[5] Although not dispositive *here*, several actions, which are consistent with Violations of Law *and* Policy *and* Rule and/or Regulation, have been taken by the Defendant Agency against the Appellant; Appellant believes one or more VA Management officials involved in these actions intended to discourage and obstruct Appellant's litigation with and through these actions.

was a narrow, integrity-of-fact-finding rationale for limited sealing or targeted redaction, not a bid for tactical secrecy.

If the court could have accommodated that concern by accepting and considering the surreply and exhibits for purposes of deciding the Rule 12 motion, while employing redactions or in camera review, instead of treating the sequestration rationale as categorically insufficient and on that basis declining to consider the surreply at all, then the court's exercise of discretion may be considered to have materially affected the presentation of the raised issues now before this Court against an abuse of discretion standard. The stringent approach used could not have been foreseen by a pro se Appellant, and given the weight of the raised issues, the court could have allowed a limited sur-reply (with tailored redactions or in-camera handling if needed) or, alternatively, explained that complete exclusion and non-consideration was being considered by the court prior to executing the denied submission.

Those rulings left Appellant with fewer opportunities to respond to new government arguments in a case-dispositive posture. Viewed through the abuse-of-discretion lens, that cumulative effect justifies vacatur and remand so that the takings claim can be considered on a fully balanced procedural footing.

**CONCLUSION**

This case was dismissed not because the Takings theory was frivolous, but because the Court of Federal Claims viewed a pro se complaint about the appropriation and diversion of Title 38 specialty labor through the narrower lens of a "retention incentive" dispute and resolved the case through discretionary case-management decisions that limited Appellant's opportunity to have the takings theory aired. The combination of (1) mischaracterizing the property interest, (2) declining to recognize appropriation and diversion of appointed labor as a cognizable Takings theory at the pleading stage, and (3) discretionary rulings on timing, briefing, and sur-reply that constrained Appellant's ability to respond, deprived him of a full, fair adjudication of the claim he pleaded.

The Fifth Amendment does not confine "property" to land, and it does not exempt the government's use of specialized professional labor, acquired and directed through sovereign Title 38 authority, from ordinary Takings scrutiny. This is a nonfrivolous constitutional claim.[6] Appellant respectfully asks this Court to

---

[6] Additional Takings and property authorities from the Supreme Court and this Court reflect the same principles on what "property" is and how the Takings Clause discerns regulation or frustration from appropriation of property interests. See *Devillier v. Texas*, 601 U.S. 285 (2024); *First English Evangelical Lutheran Church v. Cnty. of Los Angeles*, 482 U.S. 304 (1987); *Kaiser Aetna v. United States*, 444 U.S. 164 (1979); *Lynch v. United States*, 292 U.S. 571 (1934); *Penn. Coal Co. v. Mahon*, 260 U.S. 393 (1922); *Murr v. Wisconsin*, 137 S. Ct. 1933

hold that the Court of Federal Claims erred in treating his property theory as categorically foreclosed by *Testan*/*Shaw*-type cases at the Rule 12(b)(6) stage. This complaint alleges a non-frivolous, plausible property interest in specialized professional labor warranting factual development and merits briefing.

Dr. Fashina made the decision to realign the Pain Management section under the Whole Health Service *first*, only to have the Service Chiefs/MSEC vote on the realignment *after*? *Why?* Dr. Fashina instructed the Whole Health Service Chief, "wait until the realignment is complete before touching the OPPEs and privileges." *Why?* The Government never answered, neither with evidence nor with argument, to any of Dr. Mathai's arguments and evidence, and further, the Government never engaged with the threshold legal question Dr. Mathai's complaint presents, that is,

---

(2017); *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702 (2010); *United States v. Testan*, 424 U.S. 392 (1976); *A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142 (Fed. Cir. 2014); *Adams v. United States*, 471 F.3d 1321 (Fed. Cir. 2006); *Casitas Mun. Water Dist. v. United States*, 543 F.3d 1276 (Fed. Cir. 2008); *Castle v. United States*, 301 F.3d 1328 (Fed. Cir. 2002); *Cienega Gardens v. United States*, 331 F.3d 1319 (Fed. Cir. 2003); *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326 (Fed. Cir. 2012); *Campo v. United States*, Nos. 20-44, 20-47, 20-55 (Fed. Cl. Dec. 23, 2021); *In re Upstream Addicks & Barker (Tex.) Flood-Control Reservoirs*, 138 Fed. Cl. 658 (2018); *Va. Hosp. & Healthcare Ass'n v. Roberts*, 671 F. Supp. 3d 633 (E.D. Va. 2023); *El Bey v. United States*, 152 Fed. Cl. 777 (2021); *Air Borealis Ltd. P'ship v. United States*, 167 Fed. Cl. 370 (2023). Historical labor and profession decisions also treat the right to carry on a business or calling, and associated labor, goodwill, and clientele, as property-like interests or the "property" object of obtaining. See *De Lisio v. Alaska Superior Ct.*, 740 P.2d 437 (Alaska 1987); *Raymer v. Trefry*, 132 N.E. 190 (Mass. 1921); *Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003).

whether a physician's specialized "Title 38 § 7401(1)" labor can constitute "property" for Takings purposes. As the Rule 12(b)(6) movant, the government's briefing never grappled with the threshold issue, instead relying on employment-entitlement cases that presuppose, rather than resolve, the property question.

This Court can, as it has in other contexts, "express no view on the ultimate merits" while still holding that a claim is not frivolous and not foreclosed as a matter of law; on remand, the CFC should be instructed to treat this as a live Takings theory for purposes of further proceedings. Unlike in *Yifru v. United States*, No. 2023-1697 (Fed. Cir. Jan. 11, 2024), where the government did not take possession of the asserted property interest, the complaint here alleges that VA actually took possession and control of Dr. Mathai's labor.

This is not a request for the Court to supervise every reassignment within the Department of Veterans Affairs or to convert disappointed employment expectations into Takings claims. *Adams* and *Shaw* arose in the Title 5 civil-service context, where Congress channeled federal employees' job-security and pay disputes into the CSRA structure. See *Adams*, 391 F.3d at 1221–25; *Shaw*, 226 Ct. Cl. at 251. Title 38 physicians are excluded. Congress expressly excluded § 7401(1) appointees from core civil-service protections in Title 5 (38 U.S.C. § 7425(a), (b)), authorizing their appointment "without regard to general civil-

service laws" and supporting that separate regime with need-based appointment authority alongside specified market and special-pay tools.[7] Treating a <u>Title 38 specialty-labor takings claim</u> as if it were a routine civil-service pay dispute misapplies *Adams*/*Shaw* and ignores Congress' rationale in creating Title 38. This is a request for a limited but important holding: that when the United States deliberately recruits an Excepted Service specialist --- here, a Specialty-trained physician --- for a defined clinical purpose, formally acquires that specialist's labor under that representation, and then diverts that pre-acquired labor to materially different uses, the resulting Takings theory is not categorically barred at the pleading stage by general employment-entitlement cases. Title 38 professionals, and agencies that rely on them, are entitled to a clear rule on that narrow question.

A remand that corrects the government's broad framing and ensures that this focused Takings theory is adjudicated on its own terms will both vindicate pro se pleading principles and give Title 38 / Excepted Service laborers fair notice of the

---

[7] The *VA Annual Pay Ranges and Pay Tables* (Years 2020–2025 are available at https://www.va.gov/OHRM/Pay/ for review) are the official physician and dentist compensation schedules that the Department of Veterans Affairs publishes annually through its Office of Human Resources Management Title 38 pay-schedule portal. Their existence and contents are appropriate subjects of judicial notice as facts "capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). See also *Mobility Workx, LLC v. Unified Patents, LLC*, 15 F.4th 1146, 1151 (Fed. Cir. 2021) (taking judicial notice of government documents published on official agency websites).

ground on which they step when they are appointed to serve. Addressing that question in the narrow context of Title 38 specialty appointments will not turn every disappointed federal employee into a takings plaintiff; it will simply clarify that when the United States deliberately pre-plans to acquire specialty labor for one defined clinical purpose in order to divert that labor to another, the Fifth Amendment is at least in play.

For these reasons, Appellant respectfully requests that this Court:

1. **Vacate** the judgment of the Court of Federal Claims; and

2. **Remand** with instructions to:

    o Adjudicate the Takings claim as pleaded, holding that a physician's specialized Title 38 § 7401(1) labor is not categorically excluded from 'property' status at the pleading stage, and permitting that theory to proceed to factual development and merits briefing;

    o Apply the Pioneer excusable-neglect framework on the record and evaluating any government enlargement or late filing, including the initial dispositive motion; and

    o Handle sur-replies, sealing, and any extra-record material so as to allow targeted response to new matter or exclude that matter under RCFC 12(d), rather than silencing a pro se litigant's focused rejoinder.

3. **Award** Appellant other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Koshy Mathai, M.D.

Koshy Mathai, M.D.

*Pro se Appellant*

Date: December 15, 2025

# ADDENDUM

# Table of Contents

The following decisions and orders of the United States Court of Federal Claims in *Mathai v. United States*, No. 24-1954C, are reproduced in full in this Addendum:

1. **Opinion and Order (ECF 20)**

   Opinion and Order dated September 11, 2025, granting Defendant's motion to dismiss for failure to state a claim, denying Plaintiff's motion for leave to file sur-reply under seal, and dismissing the case. Appx001-003.

2. **Judgment (ECF 21)**

   Judgment dated September 12, 2025, entered pursuant to Rule 58, dismissing Plaintiff's complaint for failure to state a claim. Appx004.

3. **Order Granting Defendant's Motion for Enlargement of Time (ECF 7)**

   Order dated January 22, 2025, granting Defendant's motion for enlargement of time to answer or otherwise respond to the complaint. Appx005.

4. **Order to Show Cause Regarding Plaintiff's Motion for Leave to File Sur-Reply Under Seal (ECF 17)**

   Order dated July 14, 2025, directing Plaintiff to show cause why his proposed sur-reply and exhibits should be filed under seal. Appx006-007.

None.

**ECF 18** (Plaintiff's Motion for Leave to File Sur-Reply Under Seal, with Proposed Sur-Reply and Exhibits) was Filed under Seal in the Court of Federal Claims and remains under seal pursuant to that Court's order. Appx001-003.

Pertinent excerpts of the Order regarding Sealing are reproduced at the beginning of the Confidential Appendix.

# In the United States Court of Federal Claims

No. 24-1954C
(Filed: September 11, 2025)
**NOT FOR PUBLICATION**

```
*************************************
KOSHY MATHAI, M.D.,                  *
                                     *
               Plaintiff,            *
                                     *
v.                                   *
                                     *
THE UNITED STATES,                   *
                                     *
               Defendant.            *
                                     *
*************************************
```

## OPINION AND ORDER

Plaintiff Koshy Mathai, proceeding *pro se*, claims that the United States has taken his property — specifically, his work as a doctor for the Department of Veterans Affairs — without just compensation. *See* Am. Compl. (ECF 13). The government has moved to dismiss for failure to state a claim upon which relief can be granted. *See* Mot. (ECF 14); Resp. (ECF 15); Reply (ECF 16); *see also* RCFC 12(b)(6). Plaintiff has moved for leave to file a surreply under seal. *See* Mot. for Leave (ECF 18). The motion to dismiss (ECF 14) is **GRANTED**. The motion for leave to file a surreply under seal (ECF 18) is **DENIED**.

To begin with the surreply, Plaintiff argues that filing certain exhibits publicly "risks harm and prejudice to parallel administrative proceedings where witnesses' testimony and documentary evidence are still forthcoming." *See* Resp. to Show Cause Order (ECF 19). That explanation is too generic to justify confidentiality for particular documents presented to the Court. In addition, "desire to prevent the use of [one case's] record in other proceedings is simply not an adequate justification for its sealing." *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985); *see also In re Fort Totten Metrorail Cases*, 960 F. Supp. 2d 2, 10 (D.D.C. 2013). And the documents attached to the surreply appear to be government documents, many of which are public records that cannot be sealed when considered by the Court. *See Air Borealis Ltd. P'ship v. United States*, 167 Fed. Cl. 370, 370 n.* (2023). Plaintiff's explanation is therefore insufficient to justify filing a surreply under seal. Because I have not considered the proposed surreply or its exhibits, the motion for leave (ECF 18) may remain under seal.

**Appx001**

To survive a motion to dismiss for failure to state a claim, Plaintiff must sufficiently "plead[] facts upon which a valid claim can rest." *El Bey v. United States*, 152 Fed. Cl. 777, 780 (2021) (quoting *Strouther v. United States*, 89 Fed. Cl. 755, 760 (2009)); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Taking the Amended Complaint's well-pleaded facts as true, *see Iqbal*, 556 U.S. at 678, Plaintiff has alleged that he accepted employment in a particular department of the Veterans Affairs ("VA") healthcare system, having been told that he would be eligible for a "retention incentive" as part of his compensation. Am. Compl. at 4. After a "realignment" in the system, he found himself working in a different department, and was not paid the retention incentive. *Id.* at 3–4, 8. He therefore alleges that he was brought into the VA "for [a] purpose other than what [he] was hired for." *Id.* at 10. He seeks compensation based on what he would have been paid if he had made "other job choices … over the life of [his] career[.]" *Id.* at 3.

The Takings Clause of the Fifth Amendment provides that when the government takes property for public use, it must pay just compensation. *See* U.S. Const. amend. V. This Court has jurisdiction to consider such claims. *Jan's Helicopter Serv., Inc. v. F.A.A.*, 525 F.3d 1299, 1309 (Fed. Cir. 2008). But the Federal Circuit has explained that federal employment, and its associated salary and benefits, are not property for constitutional purposes:

> [A] statutory right to be paid money, at least in the context of federal employee compensation and benefit entitlement statutes, is not a property interest for purposes of the Takings Clause. … We decline to treat a statutory right to be paid money as a legally-recognized property interest, as we would real property, physical property, or intellectual property.

*Adams v. United States*, 391 F.3d 1212, 1225 (Fed. Cir. 2004). Plaintiff's expectations about the terms and compensation of his employment therefore are not property and cannot be the subject of a claim for just compensation under the Takings Clause.

Plaintiff may mean to argue that the government breached obligations to him by denying the employment setting and retention incentive he was allegedly told to expect. But Plaintiff's employment was "governed exclusively by statute," not by contract or other external sources of law. *Adams*, 391 F.3d at 1221; *see also Collier v. United States*, 56 Fed. Cl. 354, 356 (2003), *aff'd*, 379 F.3d 1330 (Fed. Cir. 2004); *Brockmeier v. United States*, No. 21-917C, 2021 WL 2555489, at *2 (Fed. Cl. June 22, 2021) (citing *Butler v. Pennsylvania*, 51 U.S. 402, 416 (1850)). Contract-based claims by government appointees, for example, must be dismissed under RCFC 12(b)(1) for lack of jurisdiction. *Hamlet v. United States*, 63 F.3d 1097, 1101 (Fed. Cir. 1995). A

**Appx002**

- 3 -

federal employee's expectations of particular terms of employment are entirely contingent on the legal structure governing the appointment. As long as the government follows the law in setting and changing terms of employment, the employee's prior expectations have no legal force. *Shaw v. United States*, 226 Ct. Cl. 240, 251 (1981). Though Plaintiff believes he deserved a retention incentive, Plaintiff appears to waive any claim that the government violated the law. *See* Am. Compl. at 3 ("This deprivation did not stem from unlawful conduct[.]").

## CONCLUSION

Defendant's Motion to Dismiss (ECF 14) is **GRANTED**, and Plaintiff's Motion for Leave to File Sur-reply Under Seal (ECF 18) is **DENIED**. The case is **DISMISSED** for failure to state a claim.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

- 3 -

**Appx003**

# In the United States Court of Federal Claims

No. 24-1954 C

**Filed: September 12, 2025**

```
************************************
KOSHY MATHAI, M.D.,              *
          Plaintiff,             *
                                 *          JUDGMENT
     v.                          *
                                 *
                                 *
THE UNITED STATES,               *
          Defendant.             *
************************************
```

Pursuant to the court's Opinion and Order, filed September 11, 2025, granting defendant's motion to dismiss,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that plaintiff's complaint is dismissed for failure to state a claim.


Lisa L. Reyes
Clerk of Court

By: *Ashley Reams*
Deputy Clerk


NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Effective December 1, 2023, the appeals fee is $605.00.

**Appx004**

# In the United States Court of Federal Claims

No. 24-1954C
(Filed: January 22, 2025)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

KOSHY MATHAI, MD,            \*
                                         \*
          Plaintiff,            \*
                                         \*
v.                                    \*
                                         \*
THE UNITED STATES,       \*
                                         \*
          Defendant.        \*
                                         \*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## <u>ORDER</u>

The Court is in receipt of Defendant's motion for a 60-day enlargement of time to respond to the Plaintiff's complaint. Plaintiff opposes the motion. *See* Motion (ECF 6). The Court construes this motion as a motion for leave to file out of time. The motion is **GRANTED** and, accordingly, Defendant shall file its response to Plaintiff's complaint on or before **March 21, 2025**.

The Court appreciates counsel's apology for the lateness of the request, and trusts the error will not be repeated.

       **IT IS SO ORDERED**.

                                     s/ Stephen S. Schwartz
                                     STEPHEN S. SCHWARTZ
                                     Judge

# In the United States Court of Federal Claims

No. 24-1954C

(Filed: July 14, 2025)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| KOSHY MATHAI, M.D., | * |
|  | * |
| Plaintiff, | * |
|  | * |
| v. | * |
|  | * |
| THE UNITED STATES, | * |
|  | * |
| Defendant. | * |
|  | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ORDER

On May 19, 2025, the Court received Plaintiff's submission entitled "Plaintiff's Motion for Leave to File Sur-Reply Under Seal" with accompanying Sur-Reply Under Seal to Defendant's Reply and attached exhibits. On May 27, 2025, the Court received a duplicate submission of Plaintiff's May 19 submission.

There are some circumstances in which sealed filings are appropriate, *see Johnson v. United States*, 469 F. App'x 884, 886 (Fed. Cir. 2012), but generally "[t]he party filing a motion to seal bears the 'heavy burden' to provide a 'compelling justification' or 'substantial reasons' which will overcome the presumption of public access." *Monbo v. United States*, No. 24-CV-2083, 2025 WL 48238, at \*1 (Fed. Cl. Jan. 8, 2025).

Plaintiff is **ORDERED** to show cause by **August 14, 2025**, as to why his proposed Sur-Reply and accompanying exhibits should be filed under seal. *See Starrett v. United States*, No. 21-CV-1168, 2021 WL 7627745, at \*2 (Fed. Cl. Sept. 10, 2021), *aff'd*, No. 2022-1555, 2023 WL 152827 (Fed. Cir. Jan. 11, 2023); *Starrett v. United States*, No. 21-CV-1168 (April 21, 2021) (order directing Plaintiff who attempted to file under seal to show cause as to why filing should remain under seal).

- 2 -

The Clerk of Court is directed to **FILE BY MY LEAVE**, under seal, Plaintiff's Motion for Leave to File Sur-Reply Under Seal, along with the accompanying Sur-Reply and attached exhibits, received by the Court on May 19, 2025. Plaintiff's filing shall remain under seal pending this Court's determination as to what, if any, portion of Plaintiff's Sur-Reply should be sealed. Plaintiff's duplicate submission received by the Court on May 27, 2025, is hereby **REJECTED**.

IT IS SO ORDERED.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

- 2 -

**Appx007**

**CERTIFICATE OF COMPLIANCE**

**WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS**

**AND TYPE STYLE REQUIREMENTS**

This brief complies with the type-volume limitation of Fed. R. App. P. 32 and Fed. Cir. R. 32 because it contains 10,834 words, excluding the parts exempted by Rule 32, in Times New Roman 14-point and proportionally spaced typeface.

Date: December 15, 2025

By:   /s/ Koshy Mathai, M.D.

Koshy Mathai, M.D.

*Pro se Appellant*