# In The United States Court of Appeals For The Federal Circuit

KOSHY MATHAI, M.D.,

*Plaintiff-Appellant,*

—v.—

UNITED STATES,

*Defendant-Appellee*

Appeal from the United States Court of Federal Claims
in No. 1:24-cv-01954-SSS, Judge Stephen S. Schwartz

## COMBINED PETITION FOR PANEL REHEARING AND REHEARING *EN BANC*

### OF PLAINTIFF-APPELLANT

Koshy Mathai, M.D.
*Pro se Appellant*

June 18, 2026

## INFORMAL COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Koshy Mathai, M.D., pro se Appellant, respectfully petitions for panel rehearing and rehearing en banc from the Court's June 8, 2026 nonprecedential decision affirming dismissal.

## Questions Presented

1. Whether the panel erred as a matter of law and failed to consider a preserved timing argument by treating post-appointment implementation as dispositive despite VA's pre-appointment intent while Appellant was still a private civilian outside of VA's supervisory authority.

2. Whether the panel significantly omitted facts and law by stating Appellant identified no independent property source, despite CFC and CAFC filings identifying state, common-law, federal statutory, and VA-policy sources for specialized professional labor.

3. Whether the panel misapprehended the pleaded facts at Rule 12(b)(6) by recharacterizing the asserted property as employment expectations, a retention incentive, or workplace assignment rather than the acquired use of specialized professional labor.

## Certificate of Interest

Appellant's Certificate of Interest remains unchanged from the Certificate of Interest previously filed in this appeal.

## Statement Supporting Rehearing En Banc

Pursuant to Federal Rules of Appellate Procedure 35 and 40 and Federal Circuit Rules 35 and 40, Appellant seeks rehearing because the decision contains errors of law, significantly omits facts and law, misapprehends pleaded facts, and fails to consider important arguments; en banc rehearing is warranted because this case presents a question of exceptional importance: whether the federal government may entirely insulate an antecedent, pre-appointment acquisition strategy targeting a private civilian's specialized professional labor from Fifth Amendment Takings Clause scrutiny merely by delaying implementation until after appointment and labeling the execution "managerial discretion."

The panel's decision failed to apply the timing logic articulated by the Supreme Court in *Snyder v. United States*, 603 U.S. 1 (2024). *Snyder* is instructive because it teaches that legal character can turn on when the operative intent or agreement existed, not merely on when later implementation occurred. In this case, however, the panel held that premeditation "makes no difference" because the challenged implementation occurred after appointment. *Op. 7.* That reasoning makes post-appointment timing dispositive and treats pre-appointment intent as legally irrelevant.

The timing issue is central. <u>Before appointment, Appellant was not a federal employee. He was a private civilian physician. VA and its officials had no managerial discretion over Appellant's labor</u> because he was not yet employed by VA, not yet within VA's chain of command, not yet subject to VA supervision, and not yet obligated to provide VA clinical services. VA could recruit him, select a statutory appointment purpose, identify a clinical premise, and deploy compensation, privileging, recruitment, and service-obligation mechanisms.

But VA could not exercise managerial discretion over labor it had not yet acquired. A pre-appointment plan to induce entry into federal service for one specialized clinical purpose and implement a different use only after appointment is not ordinary supervision; it is antecedent acquisition followed by delayed execution.

The panel also defined the challenged conduct at the wrong level of generality. The question is not whether VA generally may supervise current employees. The question is whether VA may invoke general post-appointment authority to insulate a specific antecedent acquisition strategy formed before Appellant entered federal service, when VA had no managerial authority over his labor. Appellant does not invoke *Snyder* to accuse VA of bribery, describe any retention award as a gratuity, or import criminal law into the Takings Clause. He invokes *Snyder* for the timing architecture the panel refused to apply: legal character may depend on whether the operative intent existed before the relevant act, not on when later implementation occurred.

Panel rehearing is also warranted because the panel misapprehended the object of Appellant's claim and significantly omitted independent legal sources Appellant had already identified. The retention incentive, realignment, service obligation, privileging structure, compensation evidence, and later clinical pressure were not the taking; they were evidence of the pre-appointment acquisition plan. The property taken was the acquired use of specialized physician labor. The pleaded claim was about antecedent acquisition, delayed execution, and the use of appointment authority to divert specialized professional labor from one statutory purpose to another. This is not a request to constitutionalize every federal workplace assignment; it is a request that the Court address the timing, property-source, and Rule 12 questions the panel bypassed.

The managerial discretion over the Appellant's labor that the panel cited <u>did not exist</u> prior to Appellant being appointed to Civil Service, and <u>yet that is exactly when Appellant pleaded the discretion was used</u> --- <u>when the involved VA manager(s) had no such managerial discretion</u> --- prior to the Appellant's appointment.

## Reasons for Granting Rehearing

### I. The Panel's Timing Analysis Conflicts with *Snyder*'s Core Timing Logic.

The panel held that it "makes no difference" that the managerial decision was "premeditated." *Op. 7*. Respectfully, that sentence resolves the central pleaded inference against Appellant and makes timing legally irrelevant at the Rule 12(b)(6) stage.

The timing point was not that a later discretionary payment became guaranteed. It was not that a retention award was a bribe, gratuity, or entitlement. The point was that intent formed before appointment can be carried out only after appointment, because VA could not redirect Appellant's clinical labor until after it acquired appointment-based control over that labor.

Before appointment, Appellant was not a VA employee. He was a private civilian physician. VA had no managerial discretion over his labor because he was not yet within VA's chain of command, not yet subject to VA supervision, and not yet obligated to provide VA clinical services. VA could decide whether to recruit him, what statutory appointment purpose to use, what clinical premise to represent, and what compensation and service-obligation mechanisms to deploy. But VA could not exercise ordinary supervisory discretion over labor it had not yet acquired.

That is the timing inversion. The panel treated the challenged conduct as ordinary managerial discretion over an existing federal employee, but the pleaded theory was that VA formed the decisive acquisition decision before appointment and used post-appointment reassignment as the implementation mechanism. VA cannot convert that pre-appointment procurement decision into ordinary management merely by delaying implementation until after the physician is locked into federal service.

*Snyder* confirms why that timing matters. *Snyder v. United States*, 603 U.S. 1, 14 (2024). In *Snyder*, the Supreme Court held that timing defined legal character. A thing of value tied to a prior corrupt exchange has different legal character from a thing of value given after the act as a later reward. The Court did <u>not</u> treat the later payment date as dispositive. It focused on when the agreement/intent existed: "The timing of the agreement is the key, not the timing of payment."

Appellant cites *Snyder* not as a bribery case controlling takings doctrine, but for its timing architecture: legal character can depend on whether operative intent existed before the relevant act. Thus, the constitutional character of the diversion cannot be determined solely by saying implementation occurred after appointment; the relevant question is whether VA intended before appointment to obtain Appellant's § 7401(1) interventional-pain labor for one purpose while planning to divert it after appointment.

The intent was not offered as a free-standing tort theory. It characterized the later diversion as the planned consummation of an earlier acquisition. A good-faith reassignment after employment begins may be ordinary management, but a pre-appointment decision to procure specialized physician labor for one represented statutory purpose and then use appointment authority to divert that labor after appointment is antecedent acquisition followed by delayed execution. At Rule 12(b)(6), that inference had to be accepted.

## II. The Panel Identified the Challenged Conduct at the Wrong Level of Generality.

The panel's error was not only that it declared pre-appointment intent irrelevant. It also defined the challenged conduct at the wrong level of generality.

The relevant question is not whether VA generally possesses discretion to manage current employees. Of course it does. The relevant question is whether VA may use that general post-appointment discretion to shield a specific pre-appointment acquisition decision: obtaining a private civilian physician's specialized interventional-pain labor under one statutory and clinical premise while intending to use the appointment relationship to divert that labor after appointment to another purpose.

Calling the entire sequence "managerial discretion" abstracts away the injury-causing conduct. The challenged conduct is not "management" in the abstract. It is the pre-appointment procurement of specialized labor followed by delayed post-appointment execution of a different use. That is the specific conduct the panel was required to analyze at Rule 12(b)(6).

The retention incentive, realignment, service obligation, privileging structure, compensation evidence, and later clinical pressure matter because they identify the specific sequence. They show acquisition, valuation, lock-in, and execution. They do not transform the case into a claim for discretionary pay or a preferred assignment. They show that the later diversion was the planned consummation of an antecedent acquisition.

A court cannot avoid that question by describing the surrounding employment relationship at the highest possible level of generality. Broad managerial authority in the background does not answer whether the specific challenged conduct—antecedent acquisition followed by delayed diversion—has constitutional significance under the Takings Clause.

7

III. The Panel's Independent-Source Analysis Overlooked Sources Appellant Identified in the CFC and Preserved in the CAFC.

The panel stated that, to establish a cognizable property interest, Appellant had to identify a source of law independent of the Fifth Amendment, "such as state, federal, or common law," that gives rise to the requisite property rights. *Op. 5–6* (quoting *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005)). The problem is that <u>Appellant did identify such sources</u>.

In the Court of Federal Claims, Appellant's response to the first motion to dismiss expressly argued that labor is property. *Appx011–014.* That filing did not rely on the Fifth Amendment alone. It identified common-law and state-law authorities recognizing labor, services, professional practice, and the right to work as property, including *Fidelity & Deposit Co. v. Arenz*, 290 U.S. 66, 68; *Board of Commissioners v. Rocky Mountain News Printing Co.*, 61 P. 494, 496; *State v. Cadigan*, 50 A. 1079, 1081; *Republic Iron & Steel Co. v. State*, 66 N.E. 1005, 1007; *Jordon v. State*, 103 S.W. 633, 634; *Branson v. Industrial Workers of the World*, 95 P. 354, 361; *New Method Laundry Co. v. MacCann*, 161 P. 990, 991–92; *Olson v. Idora Hill Mining Co.*, 155 P. 291, 293; *Bayonne Textile Corp. v. American Federation of Silk Workers*, 168 A. 799, 804; *Nation v. Chism*, 6 P.2d 766, 770; *Southern Bus Lines, Inc. v. Amalgamated Association*, 38 So. 2d 765, 771; *State v. Wordin*, 14 A. 801, 802; *DeLisio v. Alaska Superior Court*, 740 P.2d 437, 442; *International Association of Machinists District 10 v. Wisconsin*, No. 2015CV000628, 2016 Wisc. Cir. LEXIS 1; and *Campo v. United States*, Nos. 20-44, 20-47, 20-55. *Appx011–014.*

Appellant also identified Texas sources. Appellant cited *Jordon v. State*, 103 S.W. 633, 634, for the proposition that labor is property and that a laborer has the same right to sell labor

and contract with reference to it as any other property owner. *Appx012.* Appellant cited *Vallone v. Vallone*, 644 S.W.2d 455, 460; Texas Property Code title 5, subtitle B; *Bailey v. Smith*, 581 S.W.3d 374; *Kopplow Development, Inc. v. City of San Antonio*, 399 S.W.3d 532, 535; *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140; and *Evanston Insurance Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83, to show Texas's broad recognition of private property and property as rights between a person and a thing. *Appx013–014.*

Appellant then made the point unmistakable: "the claim here is neither based in contract nor for a specific benefit like the retention incentive itself, but for the appropriation of the Plaintiff's labor," and "[t]he core property interest asserted <u>is the labor itself, a recognized property right protected by the Constitution</u>." *Appx014.* That was a direct answer to the independent-source problem.

In the operative First Amended Complaint, Appellant again identified the property interest as labor, not a retention incentive. Appellant pleaded: "My labor (medical services) was my property taken from me by VA," and identified the recognized property interest as "my labor of providing Interventional Pain specialty medical care." *Appx024–033.*

In opposing the second motion to dismiss, Appellant again told the CFC that the case concerned "appropriation of labor through lawful conduct," that "Defendant acknowledges Plaintiff's claim centers on labor as the property interest," and that the claim was not merely an employment dispute or contract enforcement matter. *Appx085–098.*

Appellant also preserved the issue in this Court. In the opening brief, Appellant framed Issue II as: "A Physician's Specialized Title 38 Labor is Cognizable 'Property' for Takings Purposes at the Pleading Stage." The opening brief stated that, at the pleading stage, Appellant

identified a specific professional asset: double-board-certified Pain-Management/Anesthesiology labor targeted by statute and valued by VA in national pay tables. The opening brief also identified authority from Supreme Court, federal appellate, and state courts treating labor, professional practice, the ability to work, and the right to pursue a lawful calling as property.

The reply brief answered *Air Pegasus* directly. It stated that *Air Pegasus* confirms that property may be defined by independent sources such as state, federal, or common law, and then identified VA's nationally mandated privileging and credentialing gate—through binding directives and bylaws—as the independent federal-law source defining the scope of authorized clinical work and the labor-use interest VA acquired. The reply brief further cited VHA Directive 1100.21(1), VHA Handbook 1100.19, and the Central Texas VA bylaws requiring practitioners to practice in accordance with individually granted privileges and within their scope of practice.

The panel's statement that Appellant failed to identify a cognizable property source therefore rests on a Rule 12 and record-reading error. The panel did not merely reject Appellant's independent-source argument on the merits. It treated the relevant sources as if they were not there, because it first converted the pleaded property interest into a retention bonus, employment expectations, or job-assignment preference. That is precisely the factual and inferential substitution that Rule 12 forbids.

At the pleading stage, the question was not whether Appellant would ultimately prevail on every cited source. The question was whether Appellant identified independent state, common-law, federal statutory, and federal regulatory/bylaw sources sufficient to make the specialized-labor property theory plausible. He did. The panel's contrary statement is a major example of why rehearing is warranted.

## IV. The Panel Misapprehended the Object of the Taking by Treating Evidentiary Markers as the Taking Itself.

The panel recognized that Appellant stated he was not making a claim for a retention incentive. But the decision affirmed on that Appellant had no protected property interest in a retention bonus or in avoiding particular duties connected to organizational-chart change. *Op. 6.*

That is the central misapprehension. The retention incentive was not the taking. The realignment was not the taking. The disputed clinical pressure was not the taking in isolation. The property taken was the acquired use of specialized physician labor.

The retention incentive, realignment, service obligation, privileging structure, compensation evidence, and later clinical pressure were pleaded as evidence that VA's use of Appellant's labor was not a later-arising management decision. They were evidence of the structure, timing, and implementation of the taking. Appellant also pleaded that the criteria supporting VA's original incentive had not changed during his employment, and the complaint's attached exhibits showed that Appellant supplied information VA requested and asked whether anything further was needed; those facts were offered not to claim entitlement to a retention incentive, but to show continuity between VA's original acquisition and valuation of his specialized labor and the later acquisition-and-diversion sequence.

The panel treated the evidentiary markers of the pre-appointment plan as if they were the claim itself. That conversion made the claim easier to dismiss, but it did not decide the claim as pleaded. If the retention incentive is treated as the property, the case becomes a discretionary-pay dispute. If the realignment is treated as the property, the case becomes a workplace-assignment dispute. But Appellant did not plead either as the property taken. He pleaded the acquired use of specialized Title 38 interventional-pain physician labor.

Labor as property is not a frivolous premise. The point is not that abstract philosophy controls. The point is that Appellant identified state, common-law, federal statutory, and VA-policy sources defining labor and specialized clinical labor as property or as a legally bounded use interest. The harder constitutional question is whether specialized professional labor loses Takings Clause significance because the government places it into federal appointment structure.

Appellant did not plead a generic objection to working for VA, a demand for a better assignment, or a constitutional entitlement to a discretionary retention incentive. Nor did he plead that every use of a federal employee's labor is a taking. He pleaded that VA used Title 38 appointment authority, specialty-based physician compensation, recruitment mechanisms, privileging architecture, and a debt-backed service obligation to acquire specialized interventional-pain labor under one statutory and clinical premise while intending before appointment to redirect that labor after appointment to a materially different clinical use.

That is why the panel's federal-employment shortcut matters. Federal appointment may explain why ordinary compensation and reassignment disputes are not takings. But *Adams* addresses federal employee compensation and benefit-entitlement claims; it does not hold that specialized professional labor can never be the object of a taking, or that federal appointment categorically transforms every acquisition-and-diversion of specialized labor into ordinary management.

The panel therefore should not have ended the inquiry by asking whether Appellant had a property interest in a retention bonus, a preferred job assignment, continued employment, or particular employment expectations. The pleaded property interest was the acquired use of specialized physician labor itself, and at minimum that theory deserved analysis as pleaded rather than conversion into a claim for salary, benefits, or dissatisfaction with job duties.

<u>V. The Rule 12 Posture Independently Warrants Rehearing.</u>

This appeal arose from a Rule 12(b)(6) dismissal. At that stage, the Court was required to accept the well-pleaded factual theory and draw reasonable inferences in Appellant's favor. The panel recited that standard, but the decision then affirmed by accepting a narrower characterization of the case: retention incentive, realignment, job duties, and ordinary managerial discretion.

That was not merely legal classification. It depended on resolving the pleaded sequence and inference against Appellant. Appellant pleaded that VA acquired specialized Title 38 interventional-pain labor through appointment, recruitment, compensation, privileging, and service-obligation mechanisms; that the surrounding facts showed a pre-appointment plan to redirect that labor; and that post-appointment implementation consummated that antecedent acquisition decision.

The Government's contrary characterization may be tested later. But at Rule 12, the pleaded inference should not have been rejected by calling the post-appointment diversion ordinary management. At minimum, the timing and character of the diversion presented a live pleading-stage dispute. The question at dismissal was not whether Appellant would ultimately prove the plan. The question was whether the claim, properly identified as one involving acquired specialized physician labor and pre-appointment intent, was categorically foreclosed.

The same is true of the independent-source issue. The question at Rule 12 was not whether Appellant would ultimately prevail under every cited labor-property authority, Texas property authority, Title 38 source, VA directive, or bylaw. The question was whether Appellant identified sources of law sufficient to make the property theory plausible. The CFC and this

Court had those sources before them. Treating the case as if Appellant identified none was not acceptance of the pleadings; it <u>was rejection of Appellant's pleaded, preserved legal framework</u>.

The panel's decision effectively creates a broad rule: once a professional enters federal service, the Government's use of that professional's specialized labor can be treated as ordinary management, *even when* the pleaded theory is that the Government decided before appointment to obtain the labor under one statutory purpose and then use the appointment relationship to divert it to another purpose. That rule is too broad for this record and unnecessary to decide here.

<u>Rehearing would not require the Court to hold that Appellant ultimately prevails</u>. It would require only that the Court address the claim as pleaded and preserved: not as a retention-incentive claim, not as a reassignment claim, not as a generalized challenge to federal employment, and not as a claim unsupported by independent law, but as a Takings Clause claim concerning acquired specialized professional labor, antecedent acquisition, delayed execution, and independent state, common-law, federal, and VA-policy sources defining the labor-use interest.

## Conclusion

For these reasons, Appellant respectfully requests that the Court grant panel rehearing or rehearing en banc, vacate the June 8, 2026 judgment, and remand to the Court of Federal Claims for adjudication of the Takings claim as pleaded.

Respectfully submitted,

Dated: June 18, 2026

Koshy Mathai, M.D.
*Pro se Appellant*

## Certificate of Service

I certify that on June 18, 2026, I filed this Informal Combined Petition for Panel Rehearing and Rehearing En Banc using the Court's CM/ECF system, which will serve all registered counsel of record.

Respectfully submitted,                By: */s/ Koshy Mathai, M.D.*

Dated: June 18, 2026                    Koshy Mathai, M.D.

## Certificate of Compliance

This informal combined petition is submitted by a pro se Appellant under Federal Circuit Rule 40(h) and does not exceed 15 typewritten, double-spaced pages, excluding attachments permitted by rule.

Respectfully submitted,                By: */s/ Koshy Mathai, M.D.*

Dated: June 18, 2026                    Koshy Mathai, M.D.

# **ADDENDUM**

Addendum A: Federal Circuit Opinion, Document 38, June 8, 2026

Addendum B: Federal Circuit Judgment, Document 39, June 8, 2026

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

———————————

**KOSHY MATHAI,**

*Plaintiff-Appellant*

**v.**

**UNITED STATES,**

*Defendant-Appellee*

———————————

2026-1041

———————————

Appeal from the United States Court of Federal Claims in No. 1:24-cv-01954-SSS, Judge Stephen S. Schwartz.

———————————

Decided:  June 8, 2026

———————————

KOSHY MATHAI, Austin, TX, pro se.

TARA K. HOGAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant-appellee.  Also represented by PATRICIA M. MCCARTHY, BRETT SHUMATE.

———————————

2                                                    MATHAI v. US

Before DYK and TARANTO, *Circuit Judges*, and MOORE,
*District Judge*.[1]

PER CURIAM.

In 2020, Koshy Mathai began employment with the Department of Veterans Affairs (VA) as a physician specializing in pain management, and about two years later, he requested a retention bonus. VA denied the request. Dr. Mathai then filed this action in the United States Court of Federal Claims (Claims Court), alleging that VA's denial of a retention bonus, combined with an organizational change regarding the Pain Management Section of the VA facility at which he worked, effected a taking of his medical services labor without compensation, in violation of the Takings Clause of the Fifth Amendment to the United States Constitution. The Claims Court dismissed the action for failure to state a claim. *Mathai v. United States*, No. 24-1954C, 2025 WL 2622178, at *1 (Fed. Cl. Sept. 11, 2025) (*Decision*). We now affirm.

I

Because the case was decided on a motion to dismiss, we accept for purposes of the appeal Dr. Mathai's allegations in his complaint, as amended, and documents deemed incorporated. Appointed to a VA physician position in 2019, Dr. Mathai began his service in the VA Central Texas Health Care System (Texas facility) in March 2020. Appx. 49.[2] Dr. Mathai's specialization was pain management. *Id.* Before beginning service, he discussed the terms and compensation of the position with several officials at VA. Appx. 28–30. Specifically, Dr. Mathai was informed by the

---

[1]    Honorable K. Michael Moore, District Judge, United States District Court for the Southern District of Florida, sitting by designation.

[2]    "Appx." refers to the appendix submitted with Dr. Mathai's informal opening brief.

MATHAI v. US                                                      3

Chief of Staff at the Texas facility that a retention bonus may be offered after two years of service. Appx. 29. Dr. Mathai acknowledged that VA did not guarantee the retention bonus. Appx. 29; *see* Appx. 35 (Dr. Mathai's contemporaneous notes stating that a retention bonus after the first two years of service was "likely but not promised"). Dr. Mathai signed the Recruitment Service Agreement, agreeing to work for VA for two years in exchange for a recruitment payment of $50,003, Appx. 48, and annual pay of $320,000, Appx. 39–42. The annual pay included (1) base pay under 38 U.S.C. § 7431(b), and (2) market pay under *id.* § 7431(c). Appx. 39–42; *see also* Appx. 26 (Dr. Mathai's acknowledgement that his pay is governed by statute).

In September 2020, VA made an organizational change, moving the Pain Management Section of the Texas facility from the Surgical Service Line to a new Whole Health Service Line. Appx. 57–58. Dr. Mathai opposed that change. Appx. 31. In February 2022, VA made another organizational change, moving the Pain Management Section to the Anesthesiology Department. Appx. 31, 75, 116.

In January 2022, as his two-year mark was approaching, Dr. Mathai requested a retention bonus and a market pay increase from VA. Appx. 64–65. Dr. Mathai also sent an email to the Chief of Staff asking several questions about his pay and bonuses, and the Chief of Staff responded that she "asked the [Whole Health] Service to fill out the request [form], as is customarily done," and indicated that she would "not be responding directly to [his] other [bonus-related] questions at this time." Appx. 63–64. VA then declined to offer Dr. Mathai a retention bonus. Appx. 27.

In 2024, Dr. Mathai filed suit in the Claims Court, seeking, under the Fifth Amendment, compensation for an allegedly uncompensated taking. *See* Appx. 8. After the

4                                                          MATHAI v. US

government timely filed a motion to dismiss, Dr. Mathai
amended his complaint, alleging that what VA took was his
"labor of providing Interventional Pain specialty." Appx.
26. Dr. Mathai reasoned that the denial of the retention
incentive bonus and "repurposing of [his] labor" by the or-
ganizational changes established that VA engaged in a "co-
hesive pattern of action and inaction that functionally
appropriated [his] labor." Appx. 26; *see* Appx. 33. Dr.
Mathai explained that he was thus seeking compensation
for his "lost earnings differentials valued at $9,100,000 and
$2,785,000" from other "concrete job opportunities" that he
could have taken instead of the VA position. Appx. 26. Dr.
Mathai then made clear that he was not making a claim for
"a Retention Incentive." Appx. 33. The government re-
newed its motion to dismiss, arguing that the amended
complaint did not state a claim upon which relief may be
granted.[3]

In September 2025, the Claims Court granted the mo-
tion and dismissed the action. *Decision*, at *1. The Claims
Court reasoned that Dr. Mathai's "expectations about the
terms and compensation of his employment . . . are not
property and cannot be the subject of a claim for just com-
pensation under the Takings Clause" as his compensation
was "governed exclusively by statute" and his "prior

---

[3]     When Dr. Mathai then moved for leave to file under
seal a sur-reply with exhibits, the Claims Court ordered
him to show cause why such a filing should be permitted
and eventually denied the motion. The Claims Court ex-
plained that Dr. Mathai's reasons for seeking to file under
seal were "too generic to justify confidentiality" and further
observed that many of his exhibits were also public records.
*Decision*, at *1. The Claims Court permitted the motion to
remain under seal but did not "consider[ ] the proposed sur-
reply or its exhibits." *Id.*

expectations [about the terms of his employment] have no legal force" because such terms "are entirely contingent on the legal structure governing the appointment." *Id.* at *2 (citing *Adams v. United States*, 391 F.3d 1212, 1221 (Fed. Cir. 2004) (internal quotation marks omitted)).

The Claims Court entered a final judgment, and Dr. Mathai timely appealed. Appx. 4, 10. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## II

"Whether a taking under the Fifth Amendment has occurred is a question of law with factual underpinnings." *Cary v. United States*, 552 F.3d 1373, 1376 (Fed. Cir. 2009) (citing *Alves v. United States*, 133 F.3d 1454, 1456 (Fed. Cir. 1998)). We review de novo the Claims Court's dismissal of a suit for failure to state a claim. *112 Genesee Street, LLC v. United States*, 166 F.4th 1017, 1028 (Fed. Cir. 2026). "We take all factual allegations in the complaint as true and construe the facts in the light most favorable to the non-moving party." *Jones v. United States*, 846 F.3d 1343, 1351 (Fed. Cir. 2017). "To withstand a motion to dismiss under Rule 12(b)(6) of the [Claims Court], a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Frankel v. United State*s, 842 F.3d 1246, 1249 (Fed. Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Fifth Amendment requires the government to pay just compensation to an individual if his property was taken by the government for a public use. U.S. Const. amend. V. To determine if a taking under the Fifth Amendment has occurred, we first consider "whether the claimant has identified a cognizable Fifth Amendment property interest that is asserted to be the subject of the taking," and, if we "conclude[ ] that a cognizable property interest exists," then we "determine[ ] whether that property interest was 'taken.'" *Acceptance Insurance Companies, Inc. v. United States*, 583 F.3d 849, 854 (Fed. Cir. 2009). We

6                                                    MATHAI v. US

agree with the Claims Court that both Dr. Mathai's expectation of a retention bonus from VA and his expectation of not being assigned particular duties associated with the organizational-chart change for the Pain Management Section are not cognizable property interests protected by the Fifth Amendment. *Decision*, at \*1–2; *see* Appx. 24–33. This determination is sufficient to affirm the dismissal of Dr. Mathai's case.

To establish a cognizable interest, Dr. Mathai must identify a source of law independent of the Fifth Amendment, "such as state, federal, or common law," that gives rise to "the requisite property rights." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005) (internal citation and quotation marks omitted). Here, like the federal-employee appellants in *Adams v. United States*, Dr. Mathai "served by appointment" and had not "entered into any separate agreement with the Government, express or implied" regarding his compensation or employment terms, so his compensation and employment terms "were governed exclusively by statute, not contract." 391 F.3d at 1221. No source of law gives Dr. Mathai a property right protected by the Takings Clause in either of the two respects he invokes for this action.

Dr. Mathai contends that his "labor (medical services)" was taken by VA as a result of VA's decision not to offer Dr. Mathai a retention bonus, following his alleged discussions with VA, prior to his employment, that he may be eligible for such a bonus. *See* Appx. 25, 29, 35, 92. But Dr. Mathai, like the *Adams* appellants, possessed only a "unilateral expectation to receive" a retention bonus. 391 F.3d at 1221. Congress established that the annual pay of a physician employed by VA is composed of both base pay and market pay, 38 U.S.C. § 7431(a), with the latter concerning pay "intended to reflect the recruitment and retention needs for the specialty or assignment . . . of a particular physician . . . in a facility of [VA]," *id.* § 7431(c)(2). VA has also adopted certain standards relevant here. Appx. 31–32, 76

MATHAI v. US                                                    7

(referring to VA Handbook 5007/58).  It is undisputed that VA Handbook 5007/58 authorizes VA officials to exercise discretion in determining whether to award an employee a retention bonus.  Appx. 31–32, 76.  Thus, the statute and VA standards do not give physicians a right to a retention bonus.  *Cf.* Appellant Informal Opening Br. at 45.  That is enough to defeat Dr. Mathai's claim of a Takings Clause property right in a retention bonus, even without relying on the full scope of the precedent rejecting Takings Clause protection for a federal employee's asserted specific statutory right to be paid.  *See Adams*, 391 F.3d at 1225.

Dr. Mathai also argues that VA's shifting of his working group to a different place in the organizational structure was a taking because it resulted in VA "push[ing] an agenda of Addictionology practice," which Dr. Mathai found "incongruent" with his specialty.  Appx. 26; *see* Appellant Informal Opening Br. at 53–55.  He ties this contention to the allegation that VA assigned him (or asked him to provide) addiction-related treatment, "a task outside [his] hired-for specialty need" when it moved the Pain Management Section to the Whole Health Service Line.  Appx. 33; *see also* Appx. 26–27, 31.  We see no plausible basis for a takings claim in this allegation.

VA, in its capacity as an employer, may exercise managerial discretion to meet the needs of the agency by, for instance, reassigning employees or even eliminating employees' positions through a reduction in force.  *See Frey v. Department of Labor*, 359 F.3d 1355, 1357, 1360 (Fed. Cir. 2004); *Cross v. Department of Transportation*, 127 F.3d 1443, 1447 (Fed. Cir. 1997).  Dr. Mathai cites no law or regulation that would exempt federal employees like him from providing particular medical services assigned by VA in its managerial discretion.  Appellant Informal Opening Br. at 30–31; *see id.* at 53–56.  It makes no difference that the managerial decision was allegedly "premeditated."  *Id.* at 14, 31, 55.  In this respect, Dr. Mathai lacks the "essential" property right necessary to state a claim cognizable under

8                                                    MATHAI v. US

the Takings Clause.  *See College Saving Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 673 (1999) (internal citation and quotation marks omitted).

## III

We have considered Dr. Mathai's remaining arguments but find them unpersuasive.  For the foregoing reasons, we affirm the judgment of the Claims Court.

The parties shall bear their own costs.

**AFFIRMED**

# United States Court of Appeals
# for the Federal Circuit

---

**KOSHY MATHAI,**

*Plaintiff-Appellant*

v.

**UNITED STATES,**

*Defendant-Appellee*

---

2026-1041

---

Appeal from the United States Court of Federal Claims in No. 1:24-cv-01954-SSS, Judge Stephen S. Schwartz.

---

**JUDGMENT**

---

THIS CAUSE having been considered, it is

ORDERED AND ADJUDGED:

**AFFIRMED**

FOR THE COURT

June 8, 2026
Date

Jarrett B. Perlow
Clerk of Court